621 So.2d 1353 (1993)
Miguel HERNANDEZ, Appellant,
v.
STATE of Florida, Appellee.
No. 75127.
Supreme Court of Florida.
May 20, 1993.
Rehearing Denied August 12, 1993.
Bert Winkler, West Palm Beach, for appellant.
Robert A. Butterworth, Atty. Gen., and Sara D. Baggett, Asst. Atty. Gen., West Palm Beach, for appellee.
PER CURIAM.
Hernandez appeals his first-degree murder conviction and sentence of death. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm the conviction but vacate the sentence and remand for imposition of a life sentence without possibility of parole for twenty-five years.
Between 2:00 and 3:00 a.m., June 18, 1988, Miguel Hernandez and Tony Escalera broke into the Farmer's Market mall and stole $975 worth of jewelry from the Gold Junction shop. During the burglary, a mall security guard encountered the two, engaged them in a gun battle, was shot three times and killed. Hernandez was charged with first-degree murder and the State presented the following evidence at trial: Hernandez's fingerprints were found at the point of entry to the mall near a window on the roof and also at the point of exit on a large soft-drink canister thrown through a glass door; a witness saw two olive-skinned, dark-haired, brown-eyed men *1354 run from an alleyway near the scene on the night of the murder speaking in Spanish and carrying burlap bags and a gun. Hernandez took the stand and testified that although he did break into the mall with Escalera, it was Escalera who did the shooting.[1]
Hernandez was convicted of first-degree murder and consistent with the jury's eight-to-four vote was sentenced to death. Although the judge failed to give verbal or written reasons supporting the death penalty at sentencing, he filed a written statement twelve days later finding three aggravating[2] and no mitigating circumstances. Hernandez was also convicted of grand theft and two counts of burglary, for which he was sentenced as an habitual felony offender to consecutive terms of thirty years, life, and life, respectively. He was sentenced to three three-year mandatory minimum terms for use of a firearm during commission of the noncapital crimes. Hernandez appeals his convictions, sentence of death, habitual offender sentences, and mandatory minimum terms. He raises thirty-one issues and ten subissues.[3] We discuss three issues below *1355 which are dispositive and reject the remainder as without merit,[4] harmless error,[5] or moot.[6]
Hernandez first claims that the trial court wrongly excluded a death-scrupled venireperson for cause. During jury selection, prospective juror Kutlik initially told the court that he had no reservations concerning the death penalty:
THE COURT: How do you feel about the death penalty?
MR. KUTLIK: I think if it's necessary, it is necessary.
THE COURT: I think by the terms you used, you are saying that if they [show that the crime] is aggravated enough, you could recommend death, and if it is not, you could recommend life?
MR. KUTLIK: Yes.
Mr. Kutlik commented further when questioned by the prosecutor later:
MS. ROTHMAN: Mr. Kutlik [do you have anything to add]?
MR. KUTLIK: I have lived [in the area] about 20 years. I have never been on a jury before.
Now that I have thought about it, the question you asked me about believing in capital punishment, I don't.
The judge excused Kutlik for cause several minutes later at a bench conference, overruling defense counsel's request for an opportunity to rehabilitate the juror:
THE COURT: Let's hang onto Wong. We can excuse Hutchinson.
What about this guy [Kutlik]? He changed his mind. He said he couldn't do it.
MR. DUHL: I would like the opportunity to question him. He is saying he couldn't do it, but people were asked earlier and they said he couldn't do it and when they were questioned further  we have tons of people left.

*1356 MS. ROTHMAN: He was pretty adamant about it.
THE COURT: He might have figured out the right answer to get excused. It seems to me like 
MR. DUHL: I would like a shot at him.
THE COURT: Okay. I'm going to get rid of him.
The United States Supreme Court in Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), held "that a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction." Id. at 522, 88 S.Ct. at 1777 (footnote omitted). The Court reasoned:
[A] jury that must choose between life imprisonment and capital punishment can do little more  and must do nothing less  than express the conscience of the community on the ultimate question of life or death. Yet, in a nation less than half of whose people believe in the death penalty, a jury composed exclusively of such people cannot speak for the community. Culled of all who harbor doubts about the wisdom of capital punishment  of all who would be reluctant to pronounce the extreme penalty  such a jury can speak only for a distinct and dwindling minority.
Id. at 519-20, 88 S.Ct. at 1775-76 (footnotes omitted). The proper inquiry in such cases is whether the venireperson is "willing to consider all of the penalties provided by state law, and that he not be irrevocably committed, before the trial has begun, to vote against the penalty of death regardless of the facts and circumstances that might emerge in the course of the proceedings." Id. at 522 n. 21, 88 S.Ct. at 1777 n. 21.
Subsequent to Witherspoon, this Court reversed a defendant's convictions and vacated his death sentences on facts similar to the present. O'Connell v. State, 480 So.2d 1284 (Fla. 1985). There, "two jurors who, when examined by the prosecutor, stated that they were opposed to the death penalty, were excluded for cause by the trial judge, over defense counsel's objection that he had no opportunity to examine these jurors or try to rehabilitate them." Id. at 1286. We conclude that the rationale of Witherspoon and O'Connell controls here. By refusing defense counsel's request to question Kutlik, "the State [may have] produced a jury uncommonly willing to condemn a man to die." Witherspoon, 391 U.S. at 521, 88 S.Ct. at 1776. We note, however, that unlike the situation in O'Connell where the convictions themselves were tainted by the error, only the death sentence is so affected under the present facts.[7]
Hernandez claims as Issue 9 that the trial court erred in sentencing him to three three-year mandatory minimum terms for possession of a firearm during commission of the noncapital crimes under section 775.087(2), Florida Statutes (1987) since the State never proved that he was in actual physical possession of a firearm. The State concedes this was error and that the mandatory minimum terms should be vacated. See Earnest v. State, 351 So.2d 957, 959 (Fla. 1977) ("We agree that the term `possession' does not clearly encompass vicarious possession" for section 775.087(2) purposes.).
Finally, Hernandez claims that the trial court erred in failing to provide any reasons  oral or written  in support of the death sentence until twelve days after oral *1357 pronouncement of sentence. We agree. Section 921.141(3), Florida Statutes (1987), provides in part:
In each case in which the court imposes the death sentence, the determination of the court shall be supported by specific written findings of fact based upon the [aggravating and mitigating circumstances] and upon the records of the trial and sentencing proceedings. If the court does not make the findings requiring the death sentence, the court shall impose sentence of life imprisonment... .
The purpose of this requirement is to ensure that each death sentence handed down in Florida results from a thoughtful, deliberate, and knowledgeable weighing by the trial judge of all aggravating and mitigating circumstances surrounding both the criminal and the crime, as dictated by the United States Supreme Court and our own state constitution.
Pursuant to this statute, this Court ruled in Grossman v. State, 525 So.2d 833, 841 (Fla. 1988), cert. denied, 489 U.S. 1071, 109 S.Ct. 1354, 103 L.Ed.2d 822 (1989) that "we consider it desirable to establish a procedural rule that all written orders imposing a death sentence be prepared prior to the oral pronouncement of sentence for filing concurrent with the pronouncement... . [E]ffective thirty days after this decision becomes final, we so order." Id. The purpose of this contemporaneity requirement is to implement the intent of the Legislature  to ensure that written reasons are not merely an after-the-fact rationalization for a hasty, visceral, or mistakenly reasoned initial decision imposing death. We subsequently held in Stewart v. State, 549 So.2d 171, 176 (Fla. 1989), cert. denied, 497 U.S. 1032, 110 S.Ct. 3294, 111 L.Ed.2d 802 (1990), that "[s]hould a trial court fail to provide timely written findings in a sentencing proceeding taking place after [the effective date of the rule announced] in Grossman, we are compelled to remand for imposition of a life sentence."
Because the present sentencing proceeding took place more than thirty days after Grossman became final and the trial judge failed to issue contemporaneous written reasons supporting the death sentence, we are bound to vacate Hernandez's death penalty and remand for imposition of a life sentence. See Christopher v. State, 583 So.2d 642 (Fla. 1991) (death sentence vacated and life imprisonment ordered where written reasons given two weeks after oral pronouncement). We note that at the time of the present sentencing, Grossman had been final for a year and one-half and Stewart had been issued many months earlier.
Based on the foregoing, we affirm Hernandez's convictions and sentences with the exception of the death sentence and three three-year mandatory minimum terms, which we vacate. We remand for imposition of life imprisonment without possibility of parole for twenty-five years on the first-degree murder conviction.
It is so ordered.
BARKETT, C.J., and OVERTON, McDONALD, SHAW, GRIMES, KOGAN and HARDING, JJ., concur.
NOTES
[1] It was never established at trial whether Hernandez or Escalera was the shooter. We note that although Escalera was originally charged with the same offenses as Hernandez, the State ultimately entered into an agreement with Escalera wherein he pled guilty to a reduced charge of second-degree homicide without use of a firearm and was given a forty-year sentence. The State dropped the following charges: two counts of burglary with a firearm; grand theft; and possession of a firearm during commission of a felony.
[2] The judge found that Hernandez had been previously convicted of a violent felony, that the murder was committed during a burglary, that the murder was committed to avoid lawful arrest, and that the murder was committed for pecuniary gain. See § 921.141(5), Fla. Stat. (1987). The judge noted that he did not "double up" on the burglary and pecuniary gain aggravating factors.
[3] Hernandez raises the following issues and subissues: 1) The trial court erred in excusing a juror for cause or prohibiting defense counsel from questioning the juror; 2) the trial court erred in denying appellant's motions for judgments of acquittal; 3) the trial court erred in instructing the jury on flight; 4) the trial court erred in refusing appellant's request to excuse a juror who saw appellant in the custody of sheriff's deputies; 5) the trial court erred in refusing appellant's request to excuse a juror who was seen socializing with a friend of the wife of the deceased; 6) the trial court erred in refusing to allow testimony of Lisa Stubbs Timmerman; in refusing to allow appellant to call the codefendant as a hostile or court witness; and in refusing to allow appellant to impeach the codefendant; 7) the trial court erred in denying appellant's requested jury instructions during the trial; 8) the trial court erred in permitting the conviction and sentencing of appellant for two counts of burglary; 9) the trial court erred in sentencing appellant to three-year mandatory minimum sentences on the two counts of armed burglary because it was not proven that appellant possessed a firearm during the burglary; 10) the trial court erred in sentencing appellant on counts 2, 3, and 4 as an habitual offender; 11) the death sentence must be vacated because the trial court did not make written findings regarding the death sentence at the time of sentencing; 12) the sentence of death is disproportionate; 13) the trial court failed to consider and find proposed mitigating circumstances supported by reasonable quanta of uncontradicted evidence; 14) the trial court erred in not permitting appellant to argue during penalty phase closing arguments that he could receive consecutive sentences for each crime; 15) the trial court erred in not permitting appellant to introduce evidence and argue during penalty phase the complete circumstances of the disparate treatment of the codefendant; 16) the trial court erred in refusing to permit testimony at the penalty phase from two deputy sheriffs regarding appellant's behavior and adjustment to jail throughout the period of his trial; 17) the trial court erred in refusing to instruct the jury that appellant's age at the time of the crime could be considered as a possible mitigating circumstance; 18) the death sentence must be vacated because the trial court improperly doubled two aggravating circumstances; 19) the death sentence must be vacated because the evidence did not prove beyond a reasonable doubt that the capital felony for which the appellant was sentenced to death was committed for pecuniary gain; 20) the death sentence must be vacated because the evidence did not prove beyond a reasonable doubt that the capital felony was committed for the purpose of avoiding or preventing a lawful arrest; 21) the trial court erred in permitting the State to introduce evidence during the penalty phase that appellant had been on probation and had violated probation; 22) the trial court erred in considering improper evidence for sentencing, A) the trial court erred in permitting testimony regarding other alleged crimes committed by appellant which did not constitute aggravating circumstances, B) the trial court erred in considering a presentence investigation, including a victim impact statement, at sentencing; 23) the trial court erred in permitting the State to introduce opinion testimony from Michael Celeste regarding the reasons for the disparate treatment of the codefendant pursuant to plea agreement; 24) section 921.141, Florida Statutes, is unconstitutional; 25) the trial court erred in denying appellant's requested penalty phase jury instructions, A) the trial court erred in denying appellant's requested jury instructions on doubling aggravating circumstances, B) the trial court erred in denying appellant's requested penalty phase jury instructions 2, 3, 4, 5, 7, 8, 17, 19, and 20, during the penalty phase, C) the trial court erred in refusing appellant's requested penalty phase jury instructions 11, 12, 15, 16, 18, 21, and 30, regarding mitigating circumstances, D) the trial court erred in denying appellant's requested penalty phase instruction number 14 regarding the disparate treatment of the codefendant, E) the trial court erred in denying appellant's requested penalty phase jury instruction number 13 regarding the jury's role in the sentencing process, F) the trial court erred in denying appellant's requested penalty phase jury instruction regarding the aggravating factor of the murder having been committed for the purpose of avoiding or preventing a lawful arrest, G) the trial court erred in denying appellant's requested penalty phase jury instruction number 31 regarding appellant's prior conviction for violent crimes, H) the trial court erred in denying appellant's requested penalty phase jury instruction regarding appellant's culpability and culpable state of mind; 26) the trial court erred in permitting extensive testimony regarding appellant's prior conviction for a violent felony; 27) the death sentence must be vacated because the evidence did not prove beyond a reasonable doubt that appellant had previously been convicted of a felony involving the use or threat of violence; 28) the trial court erred in the penalty phase in permitting the State to elicit testimony regarding an exhibit which was not in evidence; 29) the trial court erred in admitting testimony from depositions during the penalty phase; 30) the trial court erred in permitting improper argument by the State during the penalty phase; 31) the trial court erred in not instructing the jury during the penalty phase as to the definition of the felonies by which it was alleged that aggravating circumstances set forth in section 921.141(5)(d), Florida Statutes, were present.
[4] Issues 2 through 8 are without merit.
[5] The trial court's failure to make complete written findings concerning Hernandez's eligibility for sentencing as an habitual felony offender is harmless error. During the penalty phase, the State introduced without objection certified copies of two prior felony convictions occurring within five years of the present crimes and the court made a written finding that the sentence is necessary for protection of the public. Hernandez does not now claim that the predicate offenses were pardoned or set aside. See State v. Rucker, 613 So.2d 460 (Fla. 1993).
[6] Issues 12 through 31 are rendered moot by our present opinion.
[7] Compare O'Connell v. State, 480 So.2d 1284 (Fla. 1986) (convictions reversed where court denied defense counsel's request to question two death-scrupled jurors, and refused defense counsel's request to eliminate for cause three jurors who would vote automatically for death) with Witherspoon v. Illinois, 391 U.S. 510, 517-18, 88 S.Ct. 1770, 1774, 20 L.Ed.2d 776 (1968) ("We simply cannot conclude ... that the exclusion of jurors opposed to capital punishment ... increases the risk of conviction.") and Messer v. State, 439 So.2d 875, 878 (Fla. 1983) ("Hence even if petitioner were correct in his allegations that prospective jurors were erroneously excused, he would not be entitled to have his conviction set aside... .").