640 So.2d 1079 (1994)
Chadwick WILLACY, Appellant, Cross-Appellee,
v.
STATE of Florida, Appellee, CROSS-APPELLANT.
No. 79217.
Supreme Court of Florida.
May 12, 1994.
Rehearing Denied August 15, 1994.
*1081 Kurt Erlenbach of Erlenbach & Erlenbach, P.A., Titusville, for appellant, cross-appellee.
Robert A. Butterworth, Atty. Gen. and Gypsy Bailey, Asst. Atty. Gen., Tallahassee, for appellee, cross-appellant.
PER CURIAM.
Chadwick Willacy appeals his conviction of first-degree murder and sentence of death.[1] We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm the conviction and vacate the sentence of death.
On September 5, 1990, when Ms. Marlys Sather failed to return to work after lunch, her employer notified the Sather family of the absence. Mr. Loveridge, Ms. Sather's son-in-law, went to her home and found a shotgun and several electronic items lying on the back porch. Inside the home he found Ms. Sather's body. Her ankles and wrists had been taped and bound, a cord was tightly wrapped around her neck, she had been struck several times in the head with a force so intense that a portion of her skull was dislodged, and she had been set afire. Medical testimony established that her death was caused by inhalation of smoke from her burning body. Willacy was convicted of first-degree murder and now asserts eight issues on appeal.[2] We address four of Willacy's claims and dismiss the others as moot.[3]
Three of Willacy's claims concern the voir dire examination of venirepersons Cruz, Payne, and Clark.
The State struck prospective juror Cruz for cause when she said she could not recommend the death penalty.[4] The court denied defense counsel's request for an opportunity to rehabilitate Cruz. Willacy argues that the denial was a violation of rule 3.300(b) of the Florida Rules of Criminal Procedure,[5]Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), and O'Connell v. State, 480 So.2d 1284 (Fla. 1985).
Under Witherspoon, death-scrupled prospective jurors could be properly excluded for cause if they "unmistakably" indicated that they would "automatically" vote against the death penalty regardless of evidence presented or if they indicated that their view of capital punishment would hinder their ability to impartially evaluate the defendant's guilt. *1082 391 U.S. at 523 n. 21, 88 S.Ct. at 1777 n. 21. The Witherspoon standard was modified in Wainwright v. Witt, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985). Under Wainwright, a prospective juror can be excused for cause if the juror's views on capital punishment would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." 469 U.S. at 424, 105 S.Ct. at 852 (quoting Adams v. Texas, 448 U.S. 38, 45, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980)). This Court adopted the Wainwright reasoning in Foster v. State, 614 So.2d 455 (Fla. 1992), cert. denied, ___ U.S. ___, 114 S.Ct. 398, 126 L.Ed.2d 346 (1993).
The trial judge properly sustained the State's challenge for cause, but committed error in not affording defense counsel an opportunity to rehabilitate the juror pursuant to rule 3.300(b). We find O'Connell v. State, 480 So.2d 1284 (Fla. 1985), and most recently, Hernandez v. State, 621 So.2d 1353 (Fla. 1993), dispositive. In O'Connell, the trial court denied the defendant an opportunity to question two death-scrupled venirepersons before excusing them for cause. Based on the rule 3.300(b) error, and the trial court's refusal to excuse for cause three venirepersons who stated that they would automatically recommend the death penalty, we reversed O'Connell's conviction and vacated his sentence of death. In so doing, we stated that "the combination of the two errors: 1) refusing to allow defense counsel to examine excluded jurors on voir dire, and 2) refusing to excuse three jurors for cause who would automatically recommend death in a capital case permeated the convictions themselves and therefore warrant a new trial." 480 So.2d at 1287.
In Hernandez we found a rule 3.300(b) violation when the trial judge refused defendant's request to question a death-scrupled venireperson who stated he was unable to recommend the death penalty. We concluded that the O'Connell rationale controlled, but we did not set aside the conviction. We noted that unlike the situation in O'Connell where the convictions themselves were tainted by the error, only the death sentence was affected in Hernandez. We find the facts in the instant case more analogous to Hernandez than to O'Connell and we therefore vacate Willacy's sentence of death and remand for a new sentencing proceeding.
When Payne, the sole African-American on the panel, was peremptorily challenged, Willacy objected to the challenge as racially motivated. State v. Slappy, 522 So.2d 18 (Fla.), cert. denied, 487 U.S. 1219, 108 S.Ct. 2873, 101 L.Ed.2d 909 (1988); State v. Neil, 457 So.2d 481 (Fla. 1984). The court conducted a Neil inquiry, and determined that Willacy's objection was groundless. We agree. The State put forth the following reasons for the Payne challenge: 1) his prior involvement with the criminal judicial system (he pled nolo contendere to disorderly conduct and resisting without violence); 2) his misrepresentation of prior employment (the employment discrepancy was later clarified); 3) misrepresentation of past criminal charges; and 4) the fact that he testified on behalf of a defendant in a drug trial. We find that the court conducted a proper Neil inquiry, that the State's criminal background check[6] was not a contrived plan directed against the sole African-American on the jury panel, and that the State put forth legitimate non-racial reasons for its peremptory challenge. We find no Neil violation.
In his final voir dire challenge, Willacy claims that Clark was under prosecution when selected as a juror and seating him violated section 40.013(1), Florida Statutes (1991).[7] We disagree. Willacy mistakenly equates Clark's placement in the Pretrial Intervention Program with prosecution. Pretrial intervention is "merely an alternative to prosecution." Cleveland v. State, 417 So.2d 653, *1083 654 (Fla. 1982). Since Clark was not under prosecution, Willacy's motion for a new trial was properly denied. Moreover, during the trial the State informed Willacy's counsel of Clark's status and his counsel voiced no objection. By failing to make a timely objection, Willacy waived the claim he now seeks to assert. We affirm the trial court's decision.
Willacy asserts that his rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), were violated. After he was arrested by Detective Santiago, Willacy was read his rights and given an opportunity to speak to a public defender. Later, without the public defender being present, Santiago initiated a conversation with Willacy that led to Willacy's implicating himself in the murder. The trial court held that although Santiago's actions violated Miranda, Willacy's statements were voluntarily made and as such they could be used to impeach him if he took the stand. Oregon v. Hass, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975) (a substantive violation of Miranda does not preclude a defendant's voluntary statement from being used for impeachment purposes); Nowlin v. State, 346 So.2d 1020 (Fla. 1977) (a defendant's voluntary statement made in technical violation of Miranda may be used to impeach). Before the defendant's statement can be admitted for impeachment purposes, the State must, by a preponderance of the evidence, show that the statement was voluntarily made. Roman v. State, 475 So.2d 1228 (Fla.), cert. denied, 475 U.S. 1090, 106 S.Ct. 1480, 89 L.Ed.2d 734 (1986); Nowlin, 346 So.2d 1020 (Fla. 1977). Voluntariness is determined by examining the totality of the circumstances surrounding the statement, including whether or not the defendant was read his rights. Traylor v. State, 596 So.2d 957 (Fla. 1992); Roman, 475 So.2d at 1232. The trial court's decision relative to the voluntary nature of Willacy's statement was based upon a hearing at which counsel for both sides were present. After hearing testimony, reviewing the transcript, listening to the cassette, and viewing the video of the interview between Santiago and Willacy, the judge determined that Willacy's statement was voluntarily made. The record supports that determination and we affirm.
The State cross-appeals the suppression of Mr. Barton's identification of Willacy.[8] On September 6, 1990, before Willacy's arrest, the police questioned Barton, a sixteen-year-old high school student. Barton stated that on September 5, 1990, he saw a man driving Ms. Sather's car, but he was unable to get a clear look at the driver's face. Detective Vail took Barton to Willacy's home, and while Barton and Vail drove by the house, Detective Santiago caused Willacy to come outside and engage in conversation. Based on this show-up, Barton stated that Willacy "looked a lot like [the driver] but I wasn't a hundred percent sure." The court granted Willacy's motion to suppress Barton's September 6 identification because it was an illegal show-up, and to suppress the September 5 sighting because it was tainted by the illegal show-up. The State now asserts that the court's suppression of the September 5 sighting was an abuse of discretion. We disagree. While pretrial identification obtained by unnecessarily suggestive means is normally not admissible in court, such identification is not per se inadmissible and may be introduced into evidence if found to be reliable and based upon the witness's independent recall absent the illegal police conduct. Edwards v. State, 538 So.2d 440, 442 (Fla. 1989). In determining the reliability of the identification, the trial judge must consider
the prior opportunity the witness had to observe the alleged criminal act; the existence of any discrepancy between any pretrial lineup description and the defendant's actual description; any identification prior to the lineup of another person; any identification by picture of the defendant prior to the lineup; failure to identify the defendant on a prior occasion; any time lapse between the alleged act and the lineup identification; and any other factors raised *1084 by the totality of the circumstances that bear upon the likelihood that the witness' in-court identification is not tainted by the illegal lineup.
Edwards, 538 So.2d at 443. It is clear from the record that Barton was unable to make an identification based solely on his independent recall. He was unable to identify Willacy solely on the basis of the September 5 sighting and it was only after the unnecessarily suggestive procedure that Barton concluded that Willacy looked a lot like the driver, but he still was not 100 percent sure. Under these circumstances, we find that the court did not abuse its discretion when it found that the illegal show-up impermissibly tainted the September 5 sighting.
Based on the foregoing, we affirm the conviction, vacate the sentence, and remand for resentencing before a jury.
It is so ordered.
GRIMES, C.J., and OVERTON, McDONALD, SHAW, KOGAN and HARDING, JJ., concur.
NOTES
[1] The jury recommended death by a vote of nine to three. The judge found the aggravating factors of a crime committed while engaged in the commission of arson, a crime committed for pecuniary gain, a murder that was especially heinous, atrocious or cruel, and a murder that was committed to avoid arrest. The statutory mitigating factor was Willacy's lack of prior criminal activity and the non-statutory mitigating factors were Willacy's history of nonviolence and his attempts at self-improvement while in jail.
[2] The issues raised by Willacy are: 1) the court committed reversible error when it refused the defense an opportunity to rehabilitate a prospective juror; 2) a prospective juror was improperly challenged based on his race; 3) the jury foreman was ineligible to serve; 4) the court improperly found that Willacy's statements were voluntarily made; 5) the killing was not committed to avoid arrest; 6) the killing was not heinous, atrocious or cruel; 7) the court improperly weighed the mitigating and aggravating factors; and 8) death is an inappropriate penalty.
[3] Our resolution of issue one renders issues five through eight moot.
[4] WHITE [state attorney]: Is there anything that you know of that would make it impossible or difficult to serve on this jury?
MS. CRUZ: The same as the first gentleman. If it ever came to the penalty part, I will not be able to give a death penalty sentence.
MR. WHITE: You realize from all the questions that the law is, if you are to serve here, you should consider the death penalty under the applicable rules and law that the Court gives you. Are you saying you cannot abide by that law?
MS. CRUZ: Right.
... .
MR. WHITE: Well, your Honor, with regard to Miss Cruz, it's the State's position that she's announced that under her beliefs, religious or conscientious or whatever, she could not abide by the law with regard to the penalty in this case, and for that reason we would ask the Court to excuse her for cause.
THE COURT: Very well. Miss Cruz, you may step on down and return to the jury pool area.
... .
MR. ERLENBACH [defense counsel]: Your Honor, we would like a brief opportunity to try to rehabilitate.
THE COURT: The Court has ruled, Mr. Erlenbach.
[5] "Counsel for both the State and defendant shall have the right to examine jurors orally on their voir dire." Fla.R.Crim.P. 3.300(b).
[6] When Payne stated that he knew a State's witness, the State contacted the witness in an effort to determine the extent of the relationship. The witness was a police officer and a former high school classmate of Payne. On his own, the officer offered to run a criminal background check on Payne and give the results to the State.
[7] "No person who is under prosecution for any crime ... shall be qualified to serve as a juror." § 40.013(1), Fla. Stat. (1991).
[8] The State also asserts that the court improperly found that the murder was not cold, calculated, and premeditated. Based on our vacation of Willacy's death sentence we need not address this issue.