705 So.2d 1367 (1998)
William Henry LOWREY, Petitioner,
v.
STATE of Florida, Respondent.
No. 89371.
Supreme Court of Florida.
January 15, 1998.
*1368 Nancy A. Daniels, Public Defender, and Jamie Spivey and Judith Dougherty, Assistant Public Defenders, Second Judicial Circuit, Tallahassee, for Petitioner.
Robert A. Butterworth, Attorney General; James W. Rogers, Bureau Chief, Criminal Appeals, and Carolyn J. Mosley, Assistant Attorney General, Tallahassee, for Respondent.
OVERTON, Justice.
We have for review Lowrey v. State, 682 So.2d 610 (Fla. 1st DCA 1996), in which the First District Court of Appeal affirmed William Henry Lowrey's conviction for carrying a concealed firearm. Lowrey had appealed the conviction on the grounds that a member of the jury who found him guilty was inherently biased in favor of the state because, at the time of trial, the juror was being prosecuted by the same state attorney's office that was prosecuting Lowrey. Neither Lowrey nor his counsel was aware of that fact until after trial. The district court found that it was required to affirm the conviction based on our decision in State v. Rodgers, 347 So.2d 610 (Fla.1977); however, because the circumstances in this case caused the court concern, it certified the following question as one of great public importance:
MUST A CONVICTED DEFENDANT SEEKING A NEW TRIAL DEMONSTRATE ACTUAL HARM FROM THE SEATING OF A JUROR WHO WAS UNDER CRIMINAL PROSECUTION WHEN HE SERVED BUT, THOUGH ASKED, FAILED TO REVEAL THIS PROSECUTION?
Lowrey, 682 So.2d at 612. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. For the reasons expressed, we agree with the concerns articulated by the district court and answer the certified question with a qualified no, holding that, where it is not revealed to a defendant that a juror is under prosecution by the same office that is prosecuting the defendant's case, inherent prejudice to the defendant is presumed and the defendant is entitled to a new trial.
The record reflects the following facts. On January 4, 1995, Juror A was charged with two counts of battery based on a complaint that alleged:
A white male service man with Adams Gas was standing in the doorway of the mobile home as I started to enter, he was behaving in a very familiar way, made comment, "With all these beautiful women, I'll never leave here." I took a seat at the kitchen table  he wanted to know everyone's name and he also rubbed my leg  uninvited  right before he went to show Pam where to leave a check.
Juror A was never arrested but was summoned to answer these battery charges. He was told at some point that, if he passed a polygraph test, the charges would be dropped. On January 11, 1995, a polygraph examiner informed Juror A in writing that he had passed the polygraph examination. Another polygraph examiner subsequently reviewed the test results and disagreed with the first examiner. Thus, the complaint and prosecution remained pending. The record does not reflect when Juror A became aware of the second review of the polygraph test results.
On May 8, 1995, a jury was selected to try Lowrey. During voir dire, the prospective jurors were asked whether they believed the defendant was guilty merely because he had been accused. Juror A responded, "The last few months I have learned that all you've got to be done is accused of something, and then you've got to prove you are innocent." Juror A was selected to serve on the jury, which subsequently convicted Lowrey of carrying a concealed firearm.
On May 18, 1995, approximately nine days after the conclusion of Lowrey's trial, Juror A entered into a pretrial intervention agreement for the battery charge. Thereafter, through coincidence, counsel for Lowrey was advised of this fact and became aware, for the first time, that Juror A was under prosecution for battery at the time of jury service. As a result of that information, Lowrey filed a motion for new trial.
*1369 At the hearing on the motion, counsel for the State related to the court the events surrounding the prosecution of Juror A and the pretrial intervention agreement. The trial judge, in denying the motion for a new trial, concluded that there were "no reasonable grounds to believe that [Juror A] had any belief, thought, request, desire, [or] intent to receive more favorable treatment in the prosecution of his own case as a result of being a juror on the William Henry Lowrey case if that be the test." The trial judge further found that
even if [Juror A] either misapprehended what the question was about, did not understand that he was still under prosecution because of the fact he had been told the case would be dropped or would not go forward based on his polygraph results, for whatever reason, this court finds there are no substantial grounds to believe that that would have affected his verdict, his discussions, or his service as a juror.
On appeal, the district court, in affirming the conviction, stated:
Section 40.013, Florida Statutes, provides that "[n]o person who is under prosecution for any crime ... shall be qualified to serve as a juror." Had the status of the juror in question been known prior to trial, he would not have served on [Lowrey's] jury. However, in light of State v. Rodgers, 347 So.2d 610 (Fla.1977), we conclude that the unqualified juror's presence on the jury does not entitle [Lowrey] to a new trial. In Rodgers the supreme court held that the defendant was not entitled to a new trial because a seventeen year old juror had served on his jury even though Florida law requires jurors to be eighteen years of age. The court wrote:
While recognizing that the Legislature has authority under Article I, Section 22, Florida Constitution, to require that jurors have qualifications of age, residence and voter registration, and may statutorily disqualify others by reason of criminal activity, occupation and infirmity, we are of the opinion that the seating of an unqualified or disqualified juror will not result in a reversal of a guilty verdict in the absence of a showing that such qualification deficiency affected the verdict or prevented a fair trial.
Lowrey, 682 So.2d at 611 (quoting Rodgers, 347 So.2d at 614) (alteration in original). Thus, both the trial court and the district court reached their respective conclusions based on the fact that no actual prejudice had been demonstrated in this case. However, the district court expressed concerns regarding whether Rodgers should be applied to the instant case. As the court explained:
[W]e perceive a difference between seating a juror who is unqualified due to being a few months short of majority and seating a juror who is disqualified due to a pending criminal prosecution. Unlike jurors with deficiencies in qualifications such as age, residence, voter registration, or even past criminal activity, a juror with a pending criminal prosecution casts doubt upon the fairness of the defendant's trial....
....
We must not sanction even the appearance of impropriety in the administration of justice. In the present case, the juror was able to obtain a favorable resolution of the charges pending against him within a few days of his jury service. And the juror even approached the prosecutor at the courthouse on the day he resolved his case and initiated a conversation about [Lowrey's] case and his own pending battery charge. Even if these events were completely coincidental and innocent, they nevertheless created an appearance of impropriety.
Id. at 611-12. Concluding that it was bound by our decision in Rodgers, the district court affirmed the denial of a new trial but certified the previously stated question.
We agree with the district court that the factual circumstances in this case are much different from those in Rodgers. In Rodgers, we held that a defendant was not entitled to a new trial under circumstances where the juror was statutorily disqualified because the juror was under eighteen years of age. In that case, no evidence or perception existed to indicate that the disqualified juror rendered an unfair or impartial vote. In this case, however, there is a clear perception of unfairness, and the integrity and credibility *1370 of the justice system is patently affected. As noted by the Texas Court of Criminal Appeals, a juror with pending criminal charges should be "absolutely disqualified," and a defendant convicted by a panel that includes such a juror should be entitled to a new trial without any showing of actual harm. Thomas v. State, 796 S.W.2d 196, 199 (Tex.Crim. App.1990).[1] We agree, finding that the very foundation of our criminal justice process is compromised when a juror who is under criminal prosecution serves on a case that is being prosecuted by the same state attorney's office that is prosecuting the juror. Consequently, we reject the State's contention that our decision in Rodgers dictates that the only remedy for a statutorily disqualified juror's serving on a jury is a posttrial evidentiary hearing at which the defendant must prove actual bias or prejudice. In reaching this conclusion, we emphasize that our holding in this case does not overrule Rodgers; we are simply carving out an exception based on the unique circumstances presented.
Accordingly, we answer the certified question in the qualified negative, quash the decision of the district court, and remand with directions that Lowrey be granted a new trial.
It is so ordered.
HARDING and WELLS, JJ., and GRIMES, Senior Justice, concur.
ANSTEAD, J., specially concurs with an opinion, in which KOGAN, C.J., and SHAW, J., concur.
ANSTEAD, Justice, specially concurring.
I concur in the result reached by the majority opinion. That result is consistent with our recent opinion in De La Rosa v. Zequeira, 659 So.2d 239, 241 (Fla.1995), wherein we approved the granting of a new trial under similar circumstances and held:
In determining whether a juror's nondisclosure of information during voir dire warrants a new trial, courts have generally utilized a three-part test. Skiles v. Ryder Truck Lines, Inc., 267 So.2d 379 (Fla. 2d DCA 1972), cert. denied, 275 So.2d 253 (Fla.1973). First, the complaining party must establish that the information is relevant and material to jury service in the case. Second, that the juror concealed the information during questioning. Lastly, that the failure to disclose the information was not attributable to the complaining party's lack of diligence. Id. at 380. We agree with this general framework for analysis and note that the trial court expressly applied this test in its order granting a new trial.
Id. at 241. The requirements of this three part test were fully met here.
In addition, however, I would recede from our prior opinion in State v. Rodgers, 347 So.2d 610 (Fla.1977), for the same reasons enumerated in Justice Hatchett's dissent therein. This Court did not explain in Rodgers, and has not explained today, the practical implications of its requirement that an innocent litigant demonstrate actual prejudice when an unqualified juror is permitted to decide the case. As Justice Hatchett explained:
I am concerned with the practical application of such a rule. How can the convicted defendant or the state "demonstrate that the juror's condition of nonage affected her ability to render a fair and impartial verdict or that she failed to do so"? Should the moving party be allowed to call all of the jurors before the court for examination? Do we inquire into their discussions or examine their thought processes in arriving at a verdict? Or, should the juror without the statutory qualifications be questioned as to the part she played in reaching the verdict? Do we try to determine what influence she had on the other jurors? Finally, must the showing of prejudice be by a preponderance of the evidence, by clear and convincing evidence, or beyond a reasonable doubt?
The majority says, "A person who is less than eighteen years of age is not, by reason *1371 of age alone, lacking in competence." I agree. But the legislature has determined after full study and debate that it is more likely than not that a person under eighteen years of age is incompetent for purposes of jury service. Lines have always been drawn on the basis of age on the theory that those below a certain age are lacking in either experience, maturity, or wisdom to appreciate the complexities and consequences of specified activities. It is the legislature's job to make the law, and in the absence of a finding that the statute is unconstitutional, it should not be effectively stricken. The court today completes the repeal of Section 40.01(1), Florida Statutes.
Id. at 614 (Hatchett, J., dissenting). The logic and clarity of Justice Hatchett's opinion is striking. Obviously, and at a minimum, Florida citizens are entitled to a jury composed of persons who are statutorily competent to serve as jurors.
KOGAN, C.J., and SHAW, J., concur.
NOTES
[1] We recognize that the Maryland Court of Appeals has held to the contrary. Hunt v. State, 345 Md. 122, 691 A.2d 1255 (1997). However, we disagree with the conclusion reached in that case.