TORPY, J.
Appellant challenges his convictions for premeditated first-degree murder and sexual battery with great force. His sole point on appeal relates to the purported statutory disqualification of one of the jurors who served on his case. Appellant contends that one of the jurors was “under prosecution” while she sat on the jury because she had received a citation for a criminal traffic offense on the day the jury was sworn. As a consequence, Appellant urges that he is entitled to a new trial even though he made no showing that the juror was actually biased. We conclude that the juror was not “under prosecution,” as that phrase is used in the jury qualification statute, because the state attorney had not received and acted on the juror’s citation. Alternatively, we conclude that the remedy of a new trial is not available to Appellant, absent a showing of prejudice. Accordingly, we affirm.
The body of the victim was found on the floor of the sauna at her apartment complex. Her neck had been cut; there were scrapes and abrasions on her face and body, and she had two broken ribs. She also had injuries to her genitalia and bowel. The pathologist opined that the victim had died of asphyxia due to manual strangulation. DNA found in the victim’s vagina and from a semen stain on her swimsuit matched Appellant’s. Fingerprints found on a beer bottle, interior kitchen door, stovetop, turpentine can and a medicine bottle inside the victim’s apartment were matched to Appellant. A grand jury indicted Appellant for first-degree premeditated murder and sexual battery with great force.
Appellant’s case was tried to a jury. Voir dire began on Monday, August 15, 2005, and concluded on Tuesday, August 23, 2005. Venire member W. was selected as a juror and sworn in on the afternoon of August 23. Unbeknownst to Appellant, the attorneys or the judge, upon arriving at the courthouse on the morning of Au *719 gust 23, venire member W. received a uniform traffic citation for driving on a suspended license with knowledge, a second-degree misdemeanor. She received the citation in the parking lot of the courthouse as she was arriving for the final day of voir dire. She was not taken into custody but was ordered to appear in court at a later date.
On Monday, August 15, 2005, the trial judge in this case qualified the entire veni-re panel in the jury assembly room. One of the qualification questions asked by the judge was whether anyone was “presently under prosecution for any crime.” Venire member W. did not give a positive response. Although the prosecutor and defense attorney both questioned the venire on August 23, no questions were asked that day regarding whether anyone had been charged with a crime or was under prosecution for a crime. W. did not inform anyone of the citation. The citation issued to W. was not filed in the clerk’s office until August 31, 2005, seven days after the guilt phase of Appellant’s four-week trial began.
The jury convicted Appellant of both counts. Thereafter, Appellant timely filed an amended motion for new trial.[1] In it, Appellant alleged entitlement to a new trial because W. had been “under prosecution” for a crime at the time she served. The court held an evidentiary hearing on the motion. Just before the hearing, the court allowed a limited interview of W. W. testified under oath that she had received a traffic citation for driving with a suspended license with knowledge in the parking lot of the courthouse. She said that she did not understand that the traffic citation was for a crime and did not believe that she was being “prosecuted” for a crime. She did not disclose the fact that she had received the citation because she did not think that it was relevant to her jury service.
W. denied knowing that her license had been suspended. The day she received the traffic citation, W. went to the clerk’s office during the lunch break and found out why her license had been suspended. She was told that the suspension was for failing to pay a ticket (for having a faulty brake light) when she lived in Broward County years earlier. She had received two tickets at the same time in Broward County, one for the faulty brake light and another for having an expired tag. She thought that she had paid both tickets. She paid the outstanding Broward County ticket online that evening and also paid a license reinstatement fee. W. testified that a friend told her that if she paid the fines, “they’re going to most likely throw it out; you’re not going to get any penalties.... ”
During the hearing on Appellant’s new trial motion, the State presented the testimony of Assistant State Attorney Jackson, the misdemeanor chief for the State Attorney’s Office for the Eighteenth Judicial Circuit in Brevard County. Ms. Jackson testified that she had been the misdemean- or chief for over thirteen years. She explained that the State Attorney’s Office routinely does not get involved in the prosecution of criminal traffic offenses until after arraignment. If a defendant pleads guilty at arraignment, there is no involvement from her office. Only in the event that a defendant pleads not guilty at arraignment does her office get notice of the case, at which time it would conduct an evaluation and determine whether to initiate prosecution. When asked the status of *720 W.’s case, Ms. Jackson testified that there was nothing in the State Attorney’s Office’s database concerning the traffic citation, indicating that the State Attorney’s Office had not yet received anything from the clerk on that citation.
In denying the new trial motion, the court specifically found credible W.’s testimony that she did not inform the court or the parties about having received the traffic citation because she did not understand that it was a crime, did not believe that she was being prosecuted for a crime and did not think it was relevant to her jury service. The court found that the issuance of a traffic citation by a law enforcement officer is insufficient to place a juror “under prosecution” within the meaning of the jury qualification statute. It reasoned that, under the Florida Constitution and Statutes, only the state attorney may prosecute crimes, and based on Ms. Jackson’s testimony, the State Attorney’s Office had not received a copy of W.’s citation, and thus, had not investigated or evaluated whether it would proceed with prosecution. The lower court ruled that a case is not “under prosecution” until it is placed in the state attorney’s system and pursued by it. In other words, the court determined that to be “under prosecution,” requires an actual prosecution rather than a potential one. Thus, the court found “a prospective juror is not ‘under prosecution’ within the meaning of the jury qualification statute unless and until the state attorney affirmatively makes that decision and takes some affirmative action to advance the prosecution.” The case proceeded to the penalty phase. The jury recommended death on the murder count, but the trial judge sentenced Appellant to consecutive life sentences. This appeal timely followed.
By statute, persons who are “under prosecution” for a crime are not qualified to serve on juries. Section 40.013(1), Florida Statutes (2007), provides:
(1) No person who is under prosecution for any crime, or who has been convicted in this state, any federal court, or any other state, territory, or country of bribery, forgery, perjury, larceny, or any other offense that is a felony in this state or which if it had been committed in this state would be a felony, unless restored to civil rights, shall be qualified to serve as a juror.
Indisputably, driving on a suspended license with knowledge, a second-degree misdemeanor, is a crime. The threshold issue framed by Appellant, therefore, is whether W. was placed “under prosecution,” as contemplated by section 40.013(1), upon her receipt of the citation, so as to disqualify her from service on Appellant’s jury. If so, Appellant contends that he is entitled to a new trial even without a showing that he was prejudiced. Although section 40.013(1) does not define the phrase “under prosecution,” Appellant argues that section 775.15, Florida Statutes (2007), which denotes when a “prosecution” is “commenced” for purposes of the statute of limitations, also marks the beginning of prosecution for purposes of the jury qualification statute. Therefore, Appellant concludes, W. was “under prosecution” when she served on the jury because the prosecution had begun and had not yet ended.
At the outset, we observe that even were we to agree with Appellant’s central premise, that the commencement of prosecution for purposes of the statute of limitations establishes the beginning of “prosecution” for purposes of the jury qualification statute, this event does not occur until the citation is both served and filed. § 775.15(4)(a), Fla. Stat. (2007) (“Prosecution on a charge on which the defendant has previously been arrested or served *721 with a summons is commenced by the filing of an indictment, information, or other charging document.”) (Emphasis added). Here, the citation was not filed until one week after the jury was sworn. Therefore, here, we are addressing a case where, at worst, W.’s prosecution commenced after she had been sworn as a juror. Appellant cites no authority suggesting that a new trial is mandated when an otherwise qualified juror becomes statutorily disqualified to serve after the trial commences. We think that the policies favoring the completion of trials and finality outweigh any argument for automatic nullification of a verdict reached under these circumstances.
The foregoing notwithstanding, we agree with the trial judge that the phrase “under prosecution,” as used in the juror qualification statute, is not necessarily defined by reference to the statute of limitations. These two statutes use different language and have distinct and unrelated purposes. Neither makes reference to the other. Thus, although both statutes contain the word “prosecution,” there is no reason to conclude that the legislature intended that the meaning of the word in the one statute necessarily applies to the other. In the absence of a statutory definition applicable here, we are obligated to interpret the phrase “under prosecution” by attributing to the words their ordinary meaning and giving effect to the purposes of the statute. See Fla. Birth-Related Neurological Injury Comp. Ass’n v. Fla. Div. of Admin. Hearings, 686 So.2d 1349, 1354 (Fla.1997).
Ordinarily, “arrest” and “prosecution” refer to different stages. in the criminal justice process. “Prosecution” generally refers to the formal pressing of criminal charges by a prosecuting authority. In Florida, the prosecuting authority is the state attorney, who has the complete discretion to initiate, continue or terminate a “prosecution.” State v. Bloom, 497 So.2d 2 (Fla.1986); Henry v. State, 825 So.2d 431, 433 (Fla. 1st DCA 2002); State v. J.M., 718 So.2d 316, 317 (Fla. 2d DCA 1998). Thus, in Willacy v. State, 640 So.2d 1079 (Fla.1994), even though the juror had been arrested and his charges remained pending, the court held that he was not “under prosecution” at the time of his jury service because the state attorney had agreed to pretrial diversion in the juror’s criminal case. Accordingly, we do not think that a person is placed “under prosecution,” as used in the jury qualification statute, until the state attorney has exercised his or her discretion to pursue the charges through formal judicial proceedings. This interpretation is consistent with a central policy underlying the qualification statute — to prevent the seating of a prospective juror who might vote to convict in hopes of receiving favorable treatment from the state attorney in the juror’s own case. Companioni v. City of Tampa, 958 So.2d 404, 415 n. 9 (Fla. 2d DCA 2007). Under this definition, we conclude that the trial court was correct in its determination that W. was not “under prosecution” because the state attorney had not received or acted on the citation.
We do not read our decision in Ivory v. State, 588 So.2d 1007 (Fla. 5th DCA 1991), to the contrary. There, we held that, for purposes of the statute of limitations, prosecution commences in a criminal traffic case when the citation is served and filed. We stated:
We agree with the state that the cited Florida Rules for Traffic Courts evince a clear intent that the uniform traffic citation constitute the charging document. When issued and served, a uniform traffic citation is the equivalent of an executed information.... [W]e conclude that service on the accused of a copy of *722 a properly prepared uniform traffic citation containing a notice to appear, and the timely filing of the original and one copy of the traffic citation, as required by section 316.650(3), Florida Statutes in the court having jurisdiction over the alleged offense, invokes the subject matter jurisdiction of the court and commences prosecution of the criminal traffic case for purposes of the statute of limitations....[2]
Id. at 1009 (emphasis added) (footnote added).
Although we have determined that W. was not “under prosecution” at the time of her service, we also conclude that a new trial is not required in any event because Appellant was not prejudiced. In reaching this conclusion, we have carefully considered the Florida Supreme Court’s decisions in State v. Rodgers, 347 So.2d 610, 613 (Fla.1977), and Lowrey v. State, 705 So.2d 1367 (Fla.1998), both of which were cited and argued by the parties. In Rodgers, our high court concluded that a defendant was not entitled to a new trial because of the participation of an unqualified juror “in the absence of evidence that the defendant was not accorded a fair and impartial jury or that his substantial rights were prejudiced.... ” 347 So.2d at 613.
In Lowrey, the defendant appealed his conviction for carrying a concealed firearm because one of the jurors who sat on his case was under prosecution by the same state attorney’s office that was prosecuting the defendant. The state conceded that the juror had been “under prosecution” but contended that the defendant had not been prejudiced nevertheless. The First District affirmed, agreeing with the state that the defendant made no showing of prejudice under Rodgers. However, the First District certified the following question to the supreme court:
MUST A CONVICTED DEFENDANT SEEKING A NEW TRIAL DEMONSTRATE ACTUAL HARM FROM THE SEATING OF A JUROR WHO WAS UNDER CRIMINAL PROSECUTION WHEN HE SERVED BUT, THOUGH ASKED, FAILED TO REVEAL THIS PROSECUTION?
Lowrey, 705 So.2d at 1368 (emphasis added). The supreme court answered the certified question with “a qualified no.” Id. It stated that “based on the unique circumstances presented,” it was carving out an exception to Rodgers’ requirement that the defendant show prejudice to be entitled to a new trial. Id. at 1370 (emphasis added). In doing so, it reversed the conviction and ordered a new trial.
In determining whether this case falls within the Lowrey exception to Rodgers, therefore, we must identify the “unique circumstances” in Lowrey upon which the supreme court relied and compare them to this case. We conclude that a central “unique circumstance” in Lowrey was the fact that the juror there concealed that he was under prosecution, despite “direct questioning on the subject.” Lowrey v. State, 682 So.2d 610 (Fla. 1st DCA 1996).[3] We reach this conclusion for two reasons. First, the certified question specifically in- *723 eluded concealment as a component. Second, the three concurring justices said that the result in Lowrey was consistent with De La Rosa v. Zequeira, 659 So.2d 239 (Fla.1995), which established a three-part test for determining whether a juror’s nondisclosure during voir dire warrants a new trial, one part of which is a showing of concealment of information by a juror during questioning.[4]
We also observe that, in Lowrey, our high court was suspicious about the juror’s conduct after trial and manifested an intent to avoid the “appearance of impropriety.” It reasoned:
We must not sanction even the appearance of impropriety in the administration of justice. In the present ease, the juror was able to obtain a favorable resolution of the charges pending against him within a few days of his jury service. And the juror even approached the prosecutor at the courthouse on the day he resolved his case and initiated a conversation about [Lowrey ⅛] case and his own pending battery charge. Even if these events were completely coincidental and innocent, they nevertheless created an appearance of impropriety.
705 So.2d at 1369.
This is not a case where a juror actively concealed information in the face of pointed questioning. Unlike the juror in Low-rey, during voir dire, W. did not inaccurately answer the question regarding whether she was under prosecution.[5] She received the traffic citation on the last day of voir dire and was never asked after that whether she was under prosecution for a crime. W. did not report the fact because she did not think it was relevant to her service. Nor is this a case where the circumstances give rise to an appearance of impropriety. When W. found out that her license was suspended and why, she immediately paid the fine and the fee for reinstatement. She testified that she thought that would resolve her case. Thus, she had no reason to curry favor with the prosecutor, who she had no reason to believe would be involved. The trial court heard her testimony and believed her. We are bound by the trial court’s factual findings. Under the facts of this case, we believe that it is appropriate to follow Rodgers rather than Lowrey, especially given the court’s admonition in Low-rey that it is an exception to Rodgers, limited to the “unique circumstances” therein presented. Absent a showing of prejudice, therefore, Appellant would not be entitled to a new trial even if W. had been “under prosecution” during her jury service.
AFFIRMED.
SAWAYA and EVANDER, JJ., concur.

. Appellant’s first motion for new trial addressed other issues not relevant to this appeal.

. Florida traffic rule 6.165 specifies the vehicle by which prosecutions for criminal traffic violations are maintained (a procedural issue); it does not purport to denote when prosecutions are commenced.

. Although neither the opinion of the district court nor the opinion of the supreme court describes the exact questions or answers, the brief filed in Lowrey by the Attorney General reveals that the venire was repeatedly asked whether anyone had been "accused” of a crime. The challenged juror identified two crimes that he had been accused of but failed to disclose the one for which he was under active prosecution. His subsequent explanation that he thought the prosecution was over was disingenuous because he had been asked whether he had been accused of a crime, not whether he was under prosecution.

. The other two parts of the test are whether the nondisclosed information is relevant and material to jury service and whether the failure to disclose is attributable to the complaining party’s lack of diligence. De La Rosa, 659 So.2d at 241. Lowrey could have established the relevancy element because inquiry about statutory qualifications is always relevant. Lowrey’s counsel clearly had been diligent because the juror had been repeatedly asked about prior crime accusations. We note here that, even under this less-stringent De La Rosa test, Appellant would not be entitled to a new trial because there was no concealment by W. See Companioni, 958 So.2d at 417-18 (Casan-ueva, J., concurring) (suggesting that Rodgers might no longer be viable after Lowrey; suggesting De La Rosa test proper analysis).

. A rationale for making a distinction such as this might be that a juror is presumably biased when he or she conceals the truth about matters relating to his or her statutory qualifications because the fact of concealment suggests some ulterior purpose or bias.