111 So.2d 35 (1959)
Raymond Lamarr BUTLER, Petitioner,
v.
R.O. CULVER, as Custodian of Florida State Prison, Respondent.
Supreme Court of Florida.
April 17, 1959.
*36 Raymond Lamarr Butler, in pro. per.
Richard W. Ervin, Atty. Gen., and Odis M. Henderson, Asst. Atty. Gen., for respondent.
THORNAL, Justice.
By his petition for a writ of habeas corpus filed here, the petitioner, Butler, seeks release from the state prison.
The point for us to determine is whether at the time of his arraignment and plea of guilty Butler was deprived of the services of a lawyer under circumstances which would amount to a deprivation of his rights to due process under the State and Federal Constitutions, F.S.A.Const. Declaration of Rights, § 12; U.S.Const. Amend. 14.
After numerous clashes with the law while a juvenile, the petitioner was finally lodged in the state prison upon conviction of a felony. On May 27, 1956, when the petitioner was twenty-one years of age, and during his confinement, one of his three cellmates was strangled to death. On the following day the petitioner pleaded guilty to the crime of second degree murder and was sentenced to life imprisonment.
At the time of the homicide the petitioner and his three cellmates were confined in an area of the state prison commonly known as "bread row". The four men were incarcerated in a cell measuring approximately six feet by eleven feet. There were no bunks or furnishings. The total equipment in the cell consisted of a toilet and a sink. Each man was furnished a blanket which he spread on the concrete floor of the cell at night and used as a sleeping place. Food in the area consisted of bread and water. In this atmosphere the cellmate of the petitioner came to his death. Sensing at least prima facie merit to the petition we issued the writ and required a return by the respondent. The return generated issues of fact which necessitated the reference of the matter to Honorable John A.H. Murphree, Circuit Judge, for the taking of testimony and the report of same to this court. Judge Murphree appointed a member of the bar to represent the petitioner at the hearing. He has now filed his report, accompanied by 150 pages of testimony supplemented by exhibits. The report recommends that the petitioner be remanded to custody. We now have the matter for consideration on the petition, the return, transcript of testimony, and the report of the Circuit Judge.
*37 The communication addressed to this court which we have treated as a petition is unsworn and naturally not expertly drawn. However, we deemed it entitled to consideration as a request for the issuance of the high prerogative writ of habeas corpus. By the petition it was contended that the petitioner was at the time confined to the maximum security building of the prison and, therefore, unable to obtain counsel to represent him in this proceeding. That impediment was eliminated. The circuit judge appointed Honorable Hal Y. Maines, a member of the bar, who capably represented the petitioner at the hearing on this matter.
The petitioner further contends that he was coerced to enter a plea of guilty of second degree murder while under the influence of illegally administered drugs in the state prison, and further, that he had requested and was refused the advice of a lawyer when charged and arraigned for the crime to which he pleaded guilty. We think the record fails to sustain the position of the petitioner on either point.
There is a total lack of evidence to support the contention with reference to the administration of illegal drugs. Apparently, at his own request, the petitioner was given some medication from the prison hospital in treatment of a chronic abdominal ailment. Certainly there is no support for the contention that this petitioner labored under illegal drugs at any time.
There are sharp conflicts as to whether the petitioner requested the services of a lawyer after he was charged with the crime of second degree murder and at the time he pleaded guilty thereto. Under applicable Florida Statutes, a trial judge is mandatorily required to furnish counsel for an indigent defendant only in capital cases. Section 909.21, Florida Statutes, F.S.A.; Johnson v. Mayo, 158 Fla. 264, 28 So.2d 585.
While the trial judge may, if the circumstances appear to require in the interest of justice, furnish counsel for an indigent defendant, in non-capital cases, he is not by our statutes or constitution required so to do. Johnson v. Mayo, Fla. 1949, 40 So.2d 134.
We do not lose sight of any duty that rests upon the Florida courts to furnish counsel in criminal cases less than capital in order to meet the requirements of the fourteenth amendment to the Constitution of the United States. However, the fourteenth amendment does not impose an absolute requirement to furnish counsel. The prescriptions of the federal organic law are met in this state if the trial judge, after appropriate investigation, determines that an accused in a case less than capital is by reason of age, mental competence and experience, able to represent himself. Also the accused may waive any right he might otherwise have by failing to request the assistance of a lawyer.
In the instant case, while the petitioner says that he mentioned the desire for a lawyer to various prison attendants, there is no evidence whatever that he made such a request to the trial judge. Furthermore, it is admitted that the petitioner was permitted to communicate by telephone with a relative before he appeared in court. It is also admitted that he made no effort whatever to obtain the assistance of the relative to obtain a lawyer for him. Petitioner does not anywhere deny the commission of the homicide to which he pleaded guilty. As a matter of fact, in reporting the telephone conversation with his Aunt, the petitioner advised her that he was going to be permitted to plead guilty to murder in the second degree.
Initially, we were concerned over the showing in this record that approximately two months after the petitioner pleaded guilty to second degree murder, it was formally adjudicated that he was suffering from an acute condition of insanity, described *38 as paranoid schizophrenia. He was subsequently treated at the State Hospital for the Insane for a period of fifteen months, after which he was returned to the State Prison and from there he instituted this proceeding. There is, however, no contention here that the petitioner was mentally incompetent, either at the time of the commission of the alleged homicide, or at the time that he appeared before the trial judge to plead guilty. While at some point this petitioner may have suffered a from of acute insanity, the alertness and apparent mental agility with which he responded to questioning and assisted his counsel in the instant matter, all suggest, at least from the printed pages of this record, a mental status that would belie any current conditions of mental incompetency. As pointed out, however, there is no contention here regarding the matter of insanity.
We have at length dealt with this matter in order to indicate to the petitioner, as well as all others interested, that we have not overlooked the recent decision of the Supreme Court of the United States in Cash v. Culver, State Prison Custodian, 79 S.Ct. 432. We think the record in the instant case adequately meets and overcomes the requirements of the decision in Cash. This record certainly cannot be condemned by the same frailities that were announced as the basis for the issuance of the writ in Cash v. Culver, supra.
Finding as we do that the petitioner has not been denied due process of law, or any other rights guaranteed to him by the State or Federal Constitutions, the writ must be and it is hereby discharged and petitioner is remanded to custody but without prejudice to any right which he might have to apply for a writ of error coram nobis.
It is so ordered.
TERRELL, C.J., and THOMAS, HOBSON and DREW, JJ., concur.