132 So.2d 329 (1961)
William Earl LEACH and Joe Smith, Appellants,
v.
STATE of Florida, Appellee.
No. 30952.
Supreme Court of Florida.
June 16, 1961.
Rehearing Denied July 18, 1961.
Hal Y. Maines, Lake Butler, for William Earl Leach and Lex Green, Starke, for Joe Smith, appellants.
Richard W. Ervin, Atty. Gen., and Odis M. Henderson, Asst. Atty. Gen., for appellee.
THORNAL, Justice.
A jury rendered a verdict of guilt of first degree murder without a mercy recommendation against appellants, Leach and Smith, who are now seeking reversal of a judgment of conviction and sentence to death.
We discuss hereafter the numerous alleged errors assigned to support a reversal.
This is another "flat top" murder. See Butler v. Culver, Fla. 1959, 111 So.2d 35.
On July 16, 1959, appellant Leach, age 21, was serving a sentence in the State prison *330 for breaking and entering and automobile theft. On the same date appellant Smith, age 22, was serving a sentence in the same prison for larceny of beer from a truck. The two men were confined in the same cell in the "flat top", a maximum security section provided for rebellious and recalcitrant prisoners. The cells in the "flat top" are concrete rooms measuring 6 feet by 12 feet. Ordinarily, four prisoners sleep in a cell, two on double-decker bunks and two on blankets spread on the concrete floor. On the fatal date in July 1959, Leach and Smith maneuvered their two cellmates into a transfer to other cells during the period set aside for "head shaving." While the two appellants were alone in their cell they discussed various methods of murdering a cellmate. They reviewed in some measure a homicide previously committed by a prisoner named Raymond Butler who had succeeded in strangling his cellmate to death and who was allowed to plead guilty of second degree murder. Butler v. Culver, supra. The conclusion to this lethal "flat top" conference simply was an agreement between Leach and Smith to the effect that they would murder the next man placed in the cell with them. They had succeeded in obtaining a spoon which they whetted to a razor edge sharpness on the concrete floor. The detail of their planning was so meticulous that at one point they even discussed decapitation of their unknown intended victim with the added sadistic prospect of "stomping" the head and forcing it through the "bean hole" and rolling it down the corridor between the cells. It may be difficult to believe that we have eliminated many of the gory details that entered into the planning conference. Those which we have stated are adequate to reveal the barbarism that characterized the arrangement and execution of this particular "flat top murder." One Duke Delano Olsen was the unfortunate assignee of space in the cell with Leach and Smith. After supper on the day of his transfer, the appellants suggested to Olsen that they could tie him with some strips of toweling so that he would not be able to release himself for at least thirty minutes. One of the appellants bound his feet, the other his arms. They then looped a piece of toweling around the unfortunate victim's neck and with calm deliberation garroted their cellmate into eternity. Being dissatisfied with the effectiveness of this disposition of the matter they slammed his head against the concrete side wall and with the improvised knife slit his juglar vein and stabbed him in the throat. They decided not to decapitate the victim for the reason that it would be "too messy." The strips of toweling and spoon were disposed of via the commode. The execution in cell 5 of the "flat top" came to a conclusion when one of the appellants called out for a "free man" to come inspect the cell because there was a dead man in there.
Twenty minutes after the alarm the "free man" arrived. He found the body of Olsen on the lower bunk. The foregoing facts are extracted principally from the confessions of the appellants. They were tried and convicted of murder in the first degree. Mercy was not recommended. On February 24, 1960, after denial of a motion for a new trial, the trial judge entered a judgment of guilt and sentence to death. We are requested to reverse this judgment.
We proceed to consider the several points suggested by the appellants to support their request for a reversal.
In the course of the trial the State was permitted to place in evidence three pictures of the dead body of the victim of the crime. The pictures were made after the body had been moved from the cell and placed on a cot in the prison hospital. They revealed the upper portion of the body of the deceased, showing the scar from the tightening of the toweling around his neck. They showed bruises on his head and a severe distention of his tongue which is said to characterize death resulting from strangulation. Appellants objected to the pictures on the grounds of irrelevancy and *331 the possibility of unduly influencing the passions and sentiments of the jury.
We have on numerous occasions been called upon to consider the effect of allegedly gruesome photographs. The decision which has gained acceptance as our leading pronouncement on the subject is Mardorff v. State, 143 Fla. 64, 196 So. 625. There the accused was found guilty of murdering his wife and was sentenced to the electric chair. The State placed in evidence four pictures of the body before it was moved and a fifth after it had been lifted away from a wall in order to expose the hilt of a knife protruding from the dead woman's back. It was contended that these pictures were offered solely for the purpose of inflaming the minds of the jurors to a state of passion and prejudice against the accused. We announced the rule that when photographs are otherwise relevant they will not be held incompetent merely because they tend to prejudice the jury. If such were not the rule then all of the evidence usually submitted by the State could be laid aside for the reason that it is always the objective of the State to convince the jury that the accused has committed a particular crime. Observing that the accused himself had created the shocking scene revealed by the photographs this Court held that the pictures were admissible to show the cause of death. It should be noted that in Mardorff the body of the victim had not been moved from the scene of the crime. In the one picture the body was actually moved slightly from the position into which it had collapsed in order to reveal the knife protruding from the back.
By contrast in Dyken v. State, Fla., 89 So.2d 866 we reversed a first degree murder conviction because of the allowance into evidence of an extremely gruesome and gory picture of the upper body and head of the victim photographed on a mortuary slab with a backdrop of pillows after the body had been removed from the scene of the murder. In Dyken we held that nothing could be accomplished by the indescribably gruesome photograph, other than the undue passion of the jurors. We were moved to the reversal of the Dyken conviction because of the extremely gruesome and inflammatory character of the photograph which served no purpose at all, other than to influence unduly the jury's reactions to the evidence.
Between the two decisions above mentioned we decided Kitchen v. State, Fla., 89 So.2d 667. We there affirmed a conviction which involved the admissibility of certain allegedly objectionable photographs. Two of them depicted the scene of the crime and were obviously relevant for this purpose. The third picture of the body of the decedent was taken at a funeral home and revealed the stab wound from which she died. We held this to be non-inflammatory in character. It was held relevant, and therefore admissible to evidence the cause of death.
Other capital cases which have involved allegedly gruesome photographs are Brooks v. State, 117 So.2d 482; Henderson v. State, 70 So.2d 358; Lindberg v. State, 134 Fla. 786, 184 So. 662; Ortiz v. State, 30 Fla. 256, 11 So. 611 and Hall v. State, 78 Fla. 420, 83 So. 513, 8 A.L.R. 1034. Also see 20 Am.Jur., Evidence, Section 729; 23 C.J.S. Criminal Law § 852; Scott, Photographic Evidence, page 570; Section 661; State v. Bucanis, 26 N.J. 45, 138 A.2d 739, 73 A.L.R.2d 760, certiorari denied 357 U.S. 910, 78 S.Ct. 1157, 2 L.Ed.2d 1160. The A.L.R. citation contains an exhaustive annotation on the subject of the admissibility of the photograph of a corpse in a prosecution for homicide.
Within the ambit of the authorities cited above we find that the photographs in the instant case contained a degree of relevancy which supported their admissibility. The indictment alleged death by strangulation. The photographs corroborated the testimony of the doctor who had concluded that this was the cause of death. No photograph of a dead body is a pleasant sight. However, where there is an element of *332 relevancy to support admissibility then the trial judge in the first instant and this Court on appeal must determine whether the gruesomeness of the portrayal is so inflammatory as to create an undue prejudice in the minds of the jury and detract them from a fair and unimpassioned consideration of the evidence. Though unpleasant, the photographs in the instant case could hardly be condemned as inflammatorily gruesome. We hold that their admissibility is supported by our decision in Kitchen v. State, supra.
Appellants next contend that error was committed in allowing testimony relating to their oral confessions to the superintendent of the prison, as well as their subsequent written confessions. These confessions are vital to the state's case. It is suggested that the confessions were obtained as the product of coercion and undue pressures by the law enforcement officers. On this point we have examined the record with extreme care. Before any of the confessions were permitted to be presented to the jury, the trial judge heard in meticulous detail the evidence regarding the obtaining of the confessions and the treatment of the prisoners prior thereto. After hearing all of this testimony out of the presence of the jury, the judge concluded that the confessions were freely and voluntarily given and were, therefore, admissible. Substantially the same testimony was thereafter related in the presence of the jury as a condition precedent to allowance of the confessions in evidence. We find nothing in the record to sustain the suggestion that the confessions were improperly obtained.
The appellants further contend that the confessions should not have been allowed in evidence because the arresting officer failed to take the accused before a committing magistrate as required by Section 901.06, Florida Statutes, F.S.A. They assert that there was no warning of constitutional rights by a committing magistrate prior to the confessions as required by Section 902.01, Florida Statutes, F.S.A. In this regard appellants place their reliance upon the rule promulgated by the Supreme Court of the United States in McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 and Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479. It is now generally agreed that the McNabb-Mallory rule does not constitute a pronouncement of constitutional requirements essential to due process. The United States Supreme Court will scrutinize a state court extra-judicial confession and its attendant circumstances to determine whether it was voluntarily obtained. This is an essential of organic due process. However, the McNabb-Mallory rule requiring prompt and practically immediate presentation of an accused to a committing magistrate in the federal system is in the nature of a rule to determine the admissibility of evidence rather than a pronouncement of an organic essential. Maguire, Evidence of Guilt, Sections 4.001 and 4.002; Crooker v. People of State of California, 357 U.S. 433, 77 S.Ct. 1287, 2 L.Ed.2d 1448. We ourselves have disposed of this contention adversely to the position of the appellants in Finley v. State, 153 Fla. 394, 14 So.2d 844, and more recently in Singer v. State, Fla., 109 So.2d 7.
With reference to certain admissions amounting to confessions which were made to the law enforcement officers, the appellants contend that the officers did not warn them in advance that any statement made by them could be used against them. In this connection appellants overlook the distinction between judicial and extra-judicial confessions. Louette v. State, 152 Fla. 495, 12 So.2d 168. The confessions involved in the instant case were extra-judicial inasmuch as they were not made in the course of a judicial proceeding or hearings. In regard to extra-judicial confessions, the primary concern of the courts is to determine whether they are voluntarily made. When such confessions are given to a law enforcement officer outside of a judicial *333 proceeding it is not essential that the officer first warn the accused that anything he might say could be used against him. Phillips v. State, 88 Fla. 117, 101 So. 204, Cullaro v. State, Fla.App., 97 So.2d 40; Conner v. State, Fla., 106 So.2d 416.
Appellants further contend that they were convicted by a jury panel, three members of which were not registered voters of the county at the time of trial. Section 40.01, Florida Statutes, F.S.A. They state that they did not learn of this fact until after their conviction. On voir dire the jurors apparently stated that they were registered voters. While this would have been a valid objection to the jurors when examined on voir dire, it comes too late after acceptance of the jury and the verdict. The jurors could have been challenged for cause during the examination, but having failed to assert the cause, the objection was waived when the appellants accepted the jury. The rule might be otherwise if the disqualification of the jurors, unknown to the defendant at the trial, was subsequently revealed to be one affecting their ability to render a fair and impartial verdict. For example, if after the trial it should develop that a juror was closely related by blood to deceased and had announced his conviction regarding the guilt of the accused and had misrepresented his position when examined, such a disqualification would enter into the very fundamentals of the trial itself. This is not so with reference to the failure of the juror to be a registered voter. The appellants make no contention that they were not fairly heard with an unprejudiced mind by the jurors in question. Their position offers no ground for reversal. Ex parte Sullivan, 155 Fla. 111, 19 So.2d 611; Burns v. State, 89 Fla. 353, 104 So. 447; Section 913.04, Florida Statutes, F.S.A.; 31 Am.Jur. "Jury" Sections 154-156.
The final contention relied upon by the appellants is that the Court failed to instruct the jury to the effect that extra-judicial confessions obtained after arrest and while the accused is in custody should be considered by them with "great care and caution." It is true that we have held that such confessions should be weighed by the jury with great caution. Harrison v. State, 149 Fla. 365, 5 So.2d 703; Boston v. State, 153 Fla. 698, 15 So.2d 607; Thompson v. State, 154 Fla. 323, 17 So.2d 395; Melton v. State, 159 Fla. 106, 30 So.2d 916. In the instant case, after a thorough investigation to determine the voluntary nature of the confession the trial judge, in sum, advised the jury that confessions which are obtained without threat, fear, or promise of reward, and when fairly made, constitute legal evidence. He carefully told them that such confessions should be considered along with the other evidence. The jury was advised that it was their function to determine the credence which should be attached to a confession. They were told to give it a "fair and unprejudiced consideration." They were instructed to consider the confession as a whole and to take into consideration the time and circumstances of its making; its harmony or inconsistency in itself or with other evidence and the motive which may have influenced the party giving it. The jury was advised that they should give effect to such parts as they found sufficient reason to credit and reject all parts that they found sufficient reason to reject; they were told that they should not give effect to any part or reject any part arbitrarily or capriciously.
While we have the view that the instruction used and quoted in Melton v. State, supra, would more likely preclude contentions of the type under consideration, the fact remains that the detail with which the trial judge instructed the jury is sufficient to meet the requirements regarding the extent of the consideration which the jury should give to such confessions. While the particular words "great care and caution" were not included in the instruction, nevertheless the specific advice given to *334 the jury by the trial judge, in effect, was the equivalent of telling them to exercise care and caution in evaluating the confession along with all of the evidence. Actually, there is no inflexible rule that a defendant is absolutely entitled to an instruction that a confession should be viewed with caution. Thompson v. State, supra. Also see Randall's Instructions to Juries, Volume 1, Section 215; Wharton's Criminal Evidence, Section 396 (12th ed. 1955); Underhill's Criminal Evidence, Section 549 (5th ed. 1956); Hughes, Instructions to Juries, Section 738; 20 Am.Jur., Evidence, Section 1227; 23 C.J.S. Criminal Law § 1233. While it certainly is proper to give an instruction using the "magic words" the rule seems to be that ordinarily, the giving of such instruction rests largely in the discretion of the trial court who should, of course, be guided by the circumstances of the particular case. The requirements of our prior decisions are sufficiently met if the trial judge covers substantially the elements which the jury should evaluate in considering the credibility to be accorded the confession. The instruction in the instant case meets this test.
In addition to the briefs and argument of counsel we ourselves have examined the evidence in detail as required by Section 924.32, Florida Statutes, F.S.A., to determine if the interests of justice require a new trial and the sufficiency of the evidence to support the verdict and judgment. Finding as we do that the evidence is sufficient and that the interests of justice do not require a new trial, the judgment is affirmed.
It is so ordered.
THOMAS, C.J., and HOBSON, ROBERTS and O'CONNELL, JJ., and WILLIS, Circuit Judge, concur.
DREW, J., concurs specially with opinion.
DREW, Justice (concurring specially).
This is another capital case in which the Court failed to charge on third degree murder. For the reasons set forth in my special concurring opinion in Johnson v. State, Fla., 130 So.2d 599, 601, I concur in the opinion and judgment in this cause.