958 So.2d 404 (2007)
Ramiro COMPANIONI, Jr., Appellant,
v.
CITY OF TAMPA, Appellee.
No. 2D05-688.
District Court of Appeal of Florida, Second District.
March 30, 2007.
Rehearing Denied May 15, 2007.
Dominic O. Fariello, Tampa, for Appellant.
Richard M. Zabak of GrayRobinson, P.A., Tampa, for Appellee.
WALLACE, Judge.
After Ramiro Companioni, Jr., obtained a jury verdict for a substantial amount in his personal injury action against the City of Tampa, the City moved for a new trial. The trial court granted the City's motion on the ground that two members of the jury were not qualified to serve because they had previously been convicted of felonies and had not had their civil rights restored. Because the City failed to establish that it was not accorded a fair and impartial jury or that its substantial rights were prejudiced by the participation of the two unqualified jurors, we reverse the order granting the City a new trial.

Facts and Procedural Background
The unfortunate event which began this case was a collision between a motorcycle driven by Mr. Companioni and a water *406 truck owned by the City. The collision occurred on the morning of November 22, 1996, on Hillsborough Avenue in Tampa. Mr. Companioni was thrown to the pavement by the force of the collision, and he sustained serious injuries as a result. After giving the required notice of intent to sue, Mr. Companioni filed a personal injury action against the City.
The case went to trial in March 2004. The trial court qualified the prospective jurors in a central juror assembly room prior to the beginning of the trial. The prospective jurors had been required to complete and bring to court a standard "Juror Voir Dire Questionnaire." Completing the form with a ballpoint pen created multiple copies so that copies of the completed questionnaires could be furnished to counsel at trial. During the voir dire examination, neither of the attorneys for the parties asked the prospective jurors any questions about prior felony convictions or any other questions pertaining to the prospective jurors' statutory qualifications to serve on a jury.[1] Instead, the questions the attorneys directed to the venire related mainly to the types of employment pursued by the prospective jurors and their family members andquite understandablythe prospective jurors' experiences with motorcycles.
At the conclusion of the trial, the jury returned a verdict in favor of Mr. Companioni for a substantial amount. The trial court subsequently entered final judgment in favor of Mr. Companioni and against the City in accordance with the verdict. The City timely served a motion for remittitur and a motion for new trial that raised multiple issues. After the final judgment was entered against it, the City filed a motion to alter or amend judgment asking the trial court to limit execution and the amount of the judgment in accordance with section 768.28, Florida Statutes (Supp.1996).
Next, the City filed an amendment to its motion for new trial. In the amendment, the City alleged that two members of the six-person jury had failed to disclose prior felony convictions and had not had their civil rights restored. In particular, Juror No. 250 had been convicted of obtaining property by worthless check on May 26, 1988, and possession of cocaine on May 27, 1988. Juror No. 1183 had been convicted of grand theft on June 18, 1996. The City attached certified copies of the felony convictions to its amended motion, along with certificates under seal from the Office of Executive Clemency stating that neither of the two jurors had had their civil rights restored. The City concluded that since two of the six jurors were disqualified from serving on the jury by reason of their prior felony convictions, the trial court was required to set aside the jury verdict and reschedule the matter for a new trial. The City did not supplement its motion for new trial with a motion to interview any of the jury members. See Fla. R. Civ. P. 1.431(h); R. Regulating Fla. Bar 4-3.5(d)(4). None of the members of the jury testified at the hearing on the motion for new trial.
In addition to the certified copies of the judgments of conviction and the certificates from the Office of Executive Clemency, the City attached to its amendment to the motion for new trial copies of the "Juror Voir Dire Questionnaires" that had been completed by each member of the jury panel. In pertinent part, the questionnaire *407 asked the prospective jurors to answer "Yes" or "No" to the following question: "Have you or a member of your family or a close friend . . . been accused of a crime?" Juror No. 250 answered this question "No"; Juror No. 1183 responded "Yes" to this inquiry. The juror questionnaire also contained the following legend in bold print near the bottom of the form just below the line provided for the prospective juror's signature: "Juror must be a U.S. and Florida Citizen and a Hillsborough County Resident; and not convicted without Governor's pardon of a felony crime." However, the questionnaire did not ask the prospective jurors to indicate whether they had ever been convicted of a felony and had not had their civil rights restored.
The trial court conducted a hearing on the City's motions. The evidence presented by the City at the hearing was limited to the certified copies of the judgments of conviction, the certificates under seal from the Office of Executive Clemency, and the copies of the juror questionnaires. At the conclusion of the hearing, the trial court granted the City a new trial and set aside the verdict and the judgment on the basis of the disqualification of the two jurors by reason of their prior felony convictions. The trial court made findings of fact and conclusions of law in support of its order as follows:
In the Thirteenth Judicial Circuit, when jurors are qualified as a group each Monday and Wednesday, they are specifically asked if they have been convicted of a felony and not had their civil rights restored. Potential jurors are advised that if they respond affirmatively, they are not qualified to serve as jurors. By shear [sic] coincidence, the undersigned made this inquiry of this particular panel. Thus, the two jurors at issue responded falsely to this inquiry. While the Florida Courts are reluctant to set aside a juror [sic] verdict once a panel is sworn, this Court cannot permit perspective [sic] jurors who provide false answers concerning their qualifications to participate in the jury process.
Further, in response to the jury questionnaires, while one juror did indicate an arrest, the other stated he had no arrests.[[2]] The Courts have overlooked disqualification based upon the partial disclosure of information or the ability to observe the information by counsel, e.g.[,] State v. Ro[d]gers, 347 So.2d 610 (Fla.1977). However, it is clear that at least one juror failed to disclose this critical information.
There is no doubt that the Constitution of this State requires a jury to be conducted by those qualified by law and the law provides that no person may serve as a juror "who has been convicted in this state . . . of . . . any offense that is a felony . . ., unless restored to civil rights." While the Court has no desire to retry this case, the plain reading of the Constitution and Section 40.013(1) do not provide any latitude.
Because it considered the juror disqualification issue to be determinative, the trial court did not address the other grounds raised in the City's motion for new trial. For the same reason, the trial court did not rule on the City's motion for remittitur or the motion to alter or amend judgment.

Framing the Issue
The Florida Constitution provides that "[t]he qualifications and the number *408 of jurors, not fewer than six, shall be fixed by law." Art. I, § 22, Fla. Const. With regard to the disqualification of certain categories of persons from jury service, section 40.013, Florida Statutes (2003), provides:
(1) No person who is under prosecution for any crime, or who has been convicted in this state, any federal court, or any other state, territory, or country of bribery, forgery, perjury, larceny, or any other offense that is a felony in this state or which if it had been committed in this state would be a felony, unless restored to civil rights, shall be qualified to serve as a juror.
(2)(a) Neither the Governor, nor Lieutenant Governor, nor any Cabinet officer, nor clerk of court, or judge shall be qualified to be a juror.
. . . .
(3) No person interested in any issue to be tried therein shall be a juror in any cause; but no person shall be disqualified from sitting in the trial of any suit in which the state or any county or municipal corporation is a party by reason of the fact that such person is a resident or taxpayer within the state or such county or municipal corporation.
Thus persons who have been convicted of bribery, forgery, perjury, larceny, or any other offense that is a felony are disqualified from jury service unless they have had their civil rights restored. In accordance with other provisions of the statute, certain other categories of persons may be excused or exempt from jury service for a variety of reasons. § 40.013(2)(b), (4)-(9). However, these grounds for excusal or exemption from jury service should not be confused with the entirely separate grounds mandating disqualification. In this case, Juror No. 250 and Juror No. 1183 were disqualified from jury service by reason of their prior felony convictions.
The judge who tried this case also happened to qualify the jurors in the jury assembly room prior to trial. Based on what he had personally seen and heard at the qualification proceeding, in the order granting the City a new trial, the trial judge made a finding of fact that the two jurors in question had responded falsely to the inquiry made in the jury assembly room about prior felony convictions. On appeal, Mr. Companioni challenges this finding. He argues that "[t]here is no record of these particular jurors responding falsely in the main jury assembly [room], and it is debatable whether each properly heard the judge's instructions." Mr. Companioni's argument on this point raises a number of issues, including the following: May a trial court properly order a new trial based on the judge's personal observations about an event that happened prior to trial during a proceeding at which neither the parties nor their attorneys were present? Would it make any difference if the parties had been given notice of the time and place of the jury qualification proceeding from which the jurors who would hear the case would be drawn? What impact would the existence of a transcript or a videotape of the jury qualification proceeding have on the analysis? These are interesting questions, but we need not address them here because Mr. Companioni did not raise this issue in the trial court.[3] Mr. Companioni's failure to *409 raise the issue in the trial court precludes him from raising it for the first time on appeal. See Cuevas v. Kelly, 873 So.2d 367, 373 (Fla. 2d DCA 2004). For purposes of our analysis in this case, we will accept the trial court's finding of fact that both Juror No. 250 and Juror No. 1183 concealed their prior felony convictions during the jury qualification proceeding.
Having disposed of these preliminary matters, we are now in a position to frame the issue raised by the facts of this case as follows: When a juror who is disqualified by statute from jury service by reason of a prior felony conviction conceals the facts pertinent to his or her disqualification and is seated on the jury, what factorsif anywarrant granting a new trial for that reason upon a timely motion?
We emphasize that our focus in this case is on juror concealment of facts pertinent to a statutory disqualification. Unlike many other reasons that would support a challenge to a juror for cause or that might lead to the exercise of a peremptory challenge, statutory disqualifications are generally based on the juror's status or other reasons that are independent of bias or prejudice for or against a party.
We also note that we are not concerned here with a case in which the party seeking a new trial had knowledge of a fact disqualifying a juror and failed to assert it until after the verdict. Under such circumstances, the absence of a timely challenge to the juror results in a waiver. See Willacy v. State, 640 So.2d 1079, 1082-83 (Fla.1994); Porter v. State, 160 So.2d 104, 109 (Fla.1963). By contrast, this case involves juror concealment of the pertinent facts. Indeed, Mr. Companioni does not claim that the City made a knowing waiver of the statutory disqualification of the two jurors.
We now turn to the consideration of the issue that we have framed. To promote clarity in our analysis, we will explore this issue by examining separately the three distinct legal theories offered by the trial court, by Mr. Companioni, and by the City.

The Trial Court's Theory
The trial court's order granting the City a new trial is based on the theory that the concealment of prior felony convictions by two of the six jurors warranted overturning the jury's verdict without any additional showing. Under this theory, the participation of one or more disqualified jurors in the trialat least where the facts pertinent to the disqualification have been concealedrenders the verdict and judgment voidable. The trial court did not cite any Florida statutes or case law in support of this theory, and our independent research has not disclosed any either. In its brief, the City does not defend the legal theory reflected in the order granting a new trial. Instead, the City raises different legal arguments in support of the trial court's order.[4] The parties agree that something more than service on the jury by one or more jurors subject to a statutory disqualification is required to warrant granting a new trial. However, they differ concerning the nature of the additional showing that is required to set aside such a jury's verdict. In light of the parties' positions, we need not devote further attention to the legal theory reflected in the order granting a new trial. Accordingly, we turn now to a consideration of the competing theories advanced *410 by Mr. Companioni and by the City.

Mr. Companioni's Theory
Mr. Companioni argues that the City is not entitled to a new trial on account of the failure of the two jurors to disclose prior felony convictions unless the City can establish actual bias or prejudice resulting from the service of the two disqualified jurors. Neither of the parties has directed our attention to any Florida case on the point involving jurors disqualified by reason of prior felony convictions. However, we do note that the federal cases support Mr. Companioni's position. See Raub v. Carpenter, 187 U.S. 159, 163-64, 23 S.Ct. 72, 47 L.Ed. 119 (1902); Coughlin v. Tailhook Ass'n, 112 F.3d 1052, 1057-59 (9th Cir.1997); United States v. Humphreys, 982 F.2d 254, 260-61 (8th Cir.1992); United States v. Boney, 977 F.2d 624, 632-35 (D.C.Cir.1992); United States v. Uribe, 890 F.2d 554, 561-62 (1st Cir.1989); United States v. Currie, 609 F.2d 1193, 1194 (6th Cir.1979); Ford v. United States, 201 F.2d 300, 301-02 (5th Cir.1953). In the absence of any Florida cases involving jurors disqualified from jury service by reason of prior felony convictions, we look for guidance to Florida cases that have addressed the problem of service by jurors who were disqualified from jury service for other reasons.
Mr. Companioni relies primarily on the decision of the Supreme Court of Florida in State v. Rodgers, 347 So.2d 610 (Fla. 1977) (Rodgers II).[5] In Rodgers II, the defendant had been tried and convicted of second degree murder. Id. at 611. One of the six jurors was, at the time of trial, only seventeen years of age. Id. The juror was seated after she had lied about her age during voir dire. Id. Under the controlling statute, the juror was disqualified from jury service because of her minority. Id. at 612. After the verdict was rendered, defense counsel moved for a new trial on account of the juror's statutory disqualification. Id. at 611. The trial court denied the motion, and the defendant appealed to the Fourth District. Id.
On appeal, the Fourth District concluded that the defendant was not afforded a fair and impartial jury because "one of the jurors, by virtue of being a minor, was legally incompetent to serve as a juror." Rodgers v. State, 338 So.2d 1121, 1122 (Fla. 4th DCA 1976) (Rodgers I). In reaching its decision, the Fourth District considered and rejected the proposition that a new trial was not warranted in the absence of a showing of actual prejudice to the defendant's rights.[6]Id. Based on this reasoning, the Fourth District reversed the defendant's judgment and sentence and remanded the case for a new trial. Id. After denying rehearing, the Fourth District certified the following question to the Supreme Court of Florida:
Where a jury member has been seated on the jury after lying about her age, where she is only 17 years old, and this fact is introduced to the trial court after the jury verdict was rendered, must a new trial be granted even without a showing of actual prejudice to the defendant?
Rodgers II, 347 So.2d at 611.
The Supreme Court of Florida answered the certified question in the negative, *411 quashed the Fourth District's decision, and remanded with directions that the judgment of conviction be reinstated. Id. at 613. In answering the certified question in the negative, the court emphatically rejected the notion that service by a juror who concealed facts pertinent to her statutory disqualification warranted a new trial in the absence of a showing of actual prejudice to the defendant. The court's reasoning on this point is instructive and is worth quoting at length:
While recognizing that the Legislature has authority under Article I, Section 22, Florida Constitution, to require that jurors have qualifications of age, residence and voter registration, and may statutorily disqualify others by reason of criminal activity, occupation and infirmity, we are of the opinion that the seating of an unqualified or disqualified juror will not result in a reversal of a guilty verdict in the absence of a showing that such qualification deficiency affected the verdict or prevented a fair trial. There is nothing sub judice to demonstrate that the juror's condition of non-age affected her ability to render a fair and impartial verdict or that she failed to do so.
It is contended by [the defendant] that the age requirement is different than other statutory juror qualifications. This argument proceeds on the premise that a person below the age specified by law lacks competence to serve as a juror. The argument is reinforced by the citation of many statutes imposing restrictions on activities of those who have not attained the threshold age. The premise on which [the defendant's] argument is based is faulty, and we reject it. A person who is less than eighteen years of age is not, by reason of age alone, lacking in competence. The legislative mandate that jurors be persons who are no less than eighteen years of age imposes the duty of preventing those below that age from being included on a panel of prospective jurors. If a person below that age is somehow included, he or she should not be accepted for duty and may be successfully challenged for cause. However, non-age does not equate with incompetence, and a verdict rendered by a jury with an underage member may be valid. . . . [A]n objection to a juror with less than complete qualifications comes too late after acceptance of the jury and verdict, unless it can be shown that the deficiency affected the juror's ability to render a verdict.
. . . .
We hold that, in the absence of evidence that the defendant was not accorded a fair and impartial jury or that his substantial rights were prejudiced by the participation and misconduct of the unqualified juror, he is not entitled to a new trial.
Id. at 613.
The City attempts to distinguish Rodgers II on the basis that the defendant's attorney was advised shortly before the jury returned its verdict of the possibility of the juror's minority but did not raise the issue until after the verdict was returned. See Rodgers I, 338 So.2d at 1121. But this fact was not included in the question that the Fourth District certified to the Supreme Court of Florida, and the supreme court did not restate the question to include the purported distinguishing fact. Moreover, the supreme court's reasoning in Rodgers II was based on much broader grounds. The supreme court declined to treat the attorney's possible knowledge of the juror's disqualification prior to the verdict as being dispositive in the face of a dissent by Justice Hatchett in which he contended that "[s]uch a disposition would be proper and just." Rodgers II, 347 So.2d at 614. Furthermore, the supreme *412 court's analysis in Rodgers II is consistent with its two earlier decisions that involved juror disqualification.
The first of these two earlier decisions is Ex parte Sullivan, 155 Fla. 111, 19 So.2d 611 (1944). In Sullivan, a defendant who had been convicted of first-degree murder and sentenced to death brought a habeas corpus proceeding. Id. at 611. The defendant contended that his conviction was void because one of the jurors who had rendered the verdict was disqualified by reason of the juror's status as a deputy sheriff. Id. The defendant alleged that he did not learn about the juror's employment as a deputy sheriff until months after the defendant's conviction. Id.
The court denied the defendant's habeas corpus petition. Id. In explaining its decision, the court said:
The fact of being a deputy sheriff is a ground of challenge for cause, Section 913.03, Florida Statutes 1941, F.S.A., but if the right to challenge for cause is not exercised before the juror is sworn to try the cause it is lost, Section 913.04, Florida Statutes 1941, F.S.A. If one of the jurors was in fact a deputy sheriff, it was a matter of record available to the petitioner at the trial and should have been seasonably raised. He should have been challenged for cause and exception taken on refusal of the challenge. The challenged error could have then been reviewed on appeal.
Id. The court concluded by noting that the defendant had not alleged "that the juror in question was biased or prejudiced or that he did not receive a fair and impartial trial." Id. In Rodgers II, the court cited Sullivan as authority for its decision. Rodgers II, 347 So.2d at 612.
Another case that the court cited in Rodgers II is Leach v. State, 132 So.2d 329 (Fla.1961). See Rodgers II, 347 So.2d at 612-13. In Leach, two defendants had been convicted of first-degree murder and sentenced to death. 132 So.2d at 329. On appeal, the defendants argued that three members of the jury that convicted them were disqualified because the jurors were not registered voters of the county at the time of trial. Id. at 333. On voir dire examination, the jurors "apparently stated that they were registered voters." Id. The defendants claimed that they did not learn of this fact pertinent to the disqualification of the three jurors until after their conviction. Id.
In a decision affirming the defendants' convictions, the court addressed and rejected the defendants' argument on this issue. Once again, the court's reasoning is worth quoting at length:
Appellants further contend that they were convicted by a jury panel, three members of which were not registered voters of the county at the time of trial. Section 40.01, Florida Statutes, F.S.A. They state that they did not learn of this fact until after their conviction. On voir dire the jurors apparently stated that they were registered voters. While this would have been a valid objection to the jurors when examined on voir dire, it comes too late after acceptance of the jury and the verdict. The jurors could have been challenged for cause during the examination, but having failed to assert the cause, the objection was waived when the appellants accepted the jury. The rule might be otherwise if the disqualification of the jurors, unknown to the defendant at the trial, was subsequently revealed to be one affecting their ability to render a fair and impartial verdict. For example, if after the trial it should develop that a juror was closely related by blood to deceased and had announced his conviction regarding the guilt of the accused and had misrepresented his position when examined, *413 such a disqualification would enter into the very fundamentals of the trial itself. This is not so with reference to the failure of the juror to be a registered voter. The [defendants] make no contention that they were not fairly heard with an unprejudiced mind by the jurors in question. Their position offers no ground for reversal.
Id. Thus in Leach, as in Sullivan and Rodgers II, the jurors' concealment of the facts pertinent to their statutory disqualification did not warrant granting a new trial in the absence of a showing of actual bias or prejudice or that the complaining party did not receive a fair and impartial trial.
The court's reasoning in Rodgers II, Sullivan, and Leach supports Mr. Companioni's argument concerning what must be established to warrant granting a new trial where a juror conceals facts pertinent to his or her statutory disqualification. However, all three of these cases address the problem of juror disqualification in the context of reasons other than felony convictions. This requires us to consider whether there is something about a juror disqualification on account of a felony conviction that would support a per se rule requiring a new trial in the absence of a showing of bias or prejudice.[7] A per se rule of this type would be consistent with the theory underlying the order granting the City a new trial in this case. Such a per se rule would be supportable only if one could conclude that the service of a juror with a prior felony convictionno matter how old the conviction or however unrelated to the matter to be triedwould deprive one or both of the parties of a fair and impartial jury. The per se rule assumes that the felon juror harbors an "inherent bias."
The notion that felon jurors have an "inherent bias" has generally been expressed in the context of criminal cases, not civil cases like the one before us.[8] One can make the argument that a convicted felon "might well harbor a continuing resentment against `the system' that punished him and an equally unthinking bias in favor of the defendant on trial, who is seen as a fellow underdog caught in its toils." Rubio v. Superior Court, 24 Cal.3d 93, 154 Cal.Rptr. 734, 593 P.2d 595, 600 (1979) (en banc). On the other hand, criminal defendants who have gone to trial and have been convicted are the parties who complain about service by felon jurors, not the prosecution. See, e.g., Humphreys, 982 F.2d at 260-61. Moreover, it is a relatively easy task to attribute motives to the felon juror that favor the prosecution. One federal judge proposes two hypotheses to explain why the felon juror could be prejudiced towards a guilty verdict. Boney, 977 F.2d at 642 (Randolph, J., dissenting). First, the felon juror "may have developed a callous cynicism about protestations of innocence, having no doubt heard many such laments while incarcerated." Id. Second, a felon juror's "desire to show othersand himselfthat he is now a good citizen might lead him to display an excess of rectitude, both in his deliberations and in his vote." Id.
However, we may decide this civil case without resolving these competing speculations about the possible motivations of felon jurors. To the extent that the theory that felon jurors have an "inherent bias" has any validity at all, its applicability is limited to criminal cases. It has no *414 application to civil cases such as the one before us. Here, there is no reason to assume that either Juror No. 250 or Juror No. 1183 was prejudiced for or against either of the parties in this relatively routine personal injury dispute. For this reason, we conclude thatat least in the context of a civil dispute such as this onea juror's statutory disqualification on account of a prior felony conviction should be treated no differently than similar disqualifications on account of age, residence, official position, and the like. Thus we agree with Mr. Companioni's theory that the City was not entitled to a new trial on account of the jurors' prior felony convictions in the absence of a showing of actual bias or prejudice or that the City did not receive a fair and impartial trial. However, before applying the law to the facts of this case, we must give due attention to the City's theory.

The City's Theory
In the trial court, the City argued that the rule of law dispositive of its motion for new trial on account of the concealment by two jurors of prior felony convictions was the three-part test that applies in cases of juror nondisclosure:
In determining whether a juror's nondisclosure of information during voir dire warrants a new trial, courts have generally utilized a three-part test. First, the complaining party must establish that the information is relevant and material to jury service in the case. Second, that the juror concealed the information during questioning. Lastly, that the failure to disclose the information was not attributable to the complaining party's lack of diligence.
Roberts v. Tejada, 814 So.2d 334, 339 (Fla. 2002) (quoting De La Rosa v. Zequeira, 659 So.2d 239, 241 (Fla.1995)). Here, the City makes the same argument in support of the order granting a new trial. According to the City, "[t]he record in this case plainly demonstrates that the three-part test was satisfied." We note that the three-part test approved in De La Rosa is more favorable to the City's position than the actual prejudice or bias test stated in Rodgers II, Sullivan, and Leach. Assuming that the other two prongs are satisfied, the City need establish only the materiality of the concealed information under the three-part test. Prejudice "is not a part of the De La Rosa test." Roberts, 814 So.2d at 342.
We have made a thorough review of the Florida cases involving juror concealment of facts pertinent to statutory disqualification and the Florida case law concerning the application of the three-part test to instances of juror nondisclosure. Based on this review, we conclude that the City is trying to pound a square peg into a round hole by arguing for the application of the three-part test to this case. A brief comparison of the different circumstances in which each line of cases properly applies will demonstrate the flaw in the City's argument.
Rodgers II, Sullivan, and Leach all involve service by jurors who concealed facts pertinent to their disqualification by statute from jury service. Facts disqualifying a juror from jury service might include minority, official position, the lack of a voter registration, oras in this casea prior felony conviction. The disqualification of a juror from jury service does not ordinarily give rise to an inference of bias or prejudice. Stated differently, a person's disqualification from jury service because of his or her status does not generally reflect on the juror's ability to be fair. For example, judges are disqualified from jury service by reason of their official position. § 40.013(2)(a). But that fact alone does not indicate that a judge would be an *415 unfair or a partial juror. To state the point more generally, service on a jury by a juror who is subject to a statutory disqualification will notabsent some other reasonresult in a trial that is not fair and impartial.[9]Cf. Mobil Chem. Co. v. Hawkins, 440 So.2d 378, 380-81 (Fla. 1st DCA 1983) (discussing Rodgers II and noting that a juror's minority "will not ordinarily support an inference of bias for or against a particular party in a particular case").
On the other hand, the three-part test approved by the Supreme Court of Florida in De La Rosa applies to juror nondisclosures of an entirely different kind of information. In De La Rosa, the court considered circumstances "where jurors allegedly failed to disclose a prior litigation history or where other information relevant to jury service was not disclosed." De La Rosa, 659 So.2d at 241. Such information could include facts demonstrating a prospective juror's actual bias or prejudice for or against one of the parties. It could also include facts about the prospective juror's employment, opinions, experiences, associations, or other factors not demonstrating actual bias or prejudice but that might bear on an attorney's ability to make an informed judgment about exercising a peremptory challenge against the prospective juror. Neither De La Rosa nor Roberts addressed the problem of juror concealment of facts pertinent to the juror's statutory qualifications. In fact, both of these cases concerned nondisclosure of a juror's prior claims history. See Roberts, 814 So.2d at 336-39; De La Rosa, 659 So.2d at 240. In this regard, the De La Rosa court's choice of the prior district court cases selected as examples of the problem under consideration in that case is instructive. The six cases cited all involved either a juror's failure to disclose prior claims history or other experiences and relationships material to the juror's service in the case. Id. at 241. None of the cited cases involved nondisclosure of facts pertinent to the juror's statutory disqualification.
A comparison of the disparate impacts of service by a juror who is disqualified by statute from jury service with service by a juror who fails to disclose prior claims history or other facts material to service in the case explains the difference in the legal standards that are applied to determining the complaining party's right to a new trial in each of these different situations. Because service by a juror who is disqualified does not establish prejudice for or against a party, a greater showing is required to obtain a new trial in cases involving juror disqualification than in other cases where juror nondisclosure is a factor. In the *416 disqualification cases, actual bias or prejudice to the complaining party must be shown to warrant granting a new trial. On the other hand, juror nondisclosure of facts material to the juror's service in the case is likely to result in service by a juror who is biased or prejudiced in fact. Under these circumstances, a lesser showing for granting a new trial is warranted. Thus, if the other two parts of the three-part test are shown, the complaining party need only establish the materiality of the undisclosed information to obtain a new trial, not bias or prejudice in fact.
Thus the juror disqualification cases and the three-part test cases do not conflict or overlap. Instead, each line of cases is applicable to a different kind of juror nondisclosure. Since this case concerns juror nondisclosure of facts pertinent to a statutory disqualification, the City's argument that the three-part test applies here lacks merit.

Applying the Test of Prejudice
In its fallback argument, the City contends that it is also entitled to a new trial under Rodgers II because it was "denied a fair and impartial jury or its substantial rights were otherwise prejudiced." The only circumstance that the City points to in support of this contention is "[t]he enormous amount of the jury's verdict against the City." We are not persuaded by the City's argument. The injuries that Mr. Companioni sustained in the accident were grave. In addition, the jury's verdict allocated ten per cent of the fault for the collision to Mr. Companioni. At the very least, these facts suggest that the jury gave thoughtful consideration to the issues before it. For reasons that are unexplained in our record, the City never sought to interview Juror No. 250 or Juror No. 1183. Neither of these jurors testified at the hearing on the motion for new trial. In fact, the City did not call any witnesses at the hearing. Thus we know nothing of the circumstances surrounding the jurors' nondisclosure of their prior felony convictions or what impactif anythe prior convictions had on their jury service. Furthermore, the City did not present any evidence at the hearing on the motion for new trial tending to establish that the two jurors were biased against it or that it did not receive a fair and impartial trial. The City was entitled to a fair trial, but it cannot insist on a perfect one. See McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 553, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984). Accordingly, we conclude that the trial court erred in granting the City a new trial on the ground of the concealment by the two jurors of their prior felony convictions.

Conclusion
The principle of law that we apply in this case is necessary to promote some measure of stability and finality in jury trials. In Florida, jury lists are compiled primarily from the records maintained by the Department of Highway Safety and Motor Vehicles of persons who have either a driver's license or an identification card record. § 40.011. Thus jury venires are composed of a broad cross-section of the population. Many of the persons reporting for jury duty in the trial courts of this state will have prior felony convictions. Although prospective jurors are asked to disclose if they have a prior felony conviction and have not had their civil rights restored before being qualified to serve, we would be naive to assume that such self-reporting of prior felony convictions is always complete. See Brian C. Kalt, The Exclusion of Felons from Jury Service, 53 Am. U.L.Rev. 65, 110-13 (2003) (discussing the problem of nondisclosure of felony convictions by prospective jurors and the variety of reasons underlying this phenomenon); see also Forbes v. State, 933 So.2d *417 706 (Fla. 4th DCA 2006) (affirming judgment and sentence for criminal contempt against prospective juror who failed to disclose both a prior juvenile arrest and a pending criminal charge). As in this case, many persons with prior felony convictions undoubtedly serve on juries in this state. At least in civil cases where this occurs, it is entirely appropriate to require a showing of actual bias or prejudice before setting aside a verdict. As the Supreme Court of Florida said in Sullivan, "[t]o hold otherwise would render trials interminable and impose an undue burden on the taxpayer." Sullivan, 19 So.2d at 611. A contrary rule would also unfairly reward a strategic decision not to challenge a juror if one of the parties had knowledge of the juror's prior felony conviction. See Kalt, 53 Am. U.L.Rev. at 163. Counsel who are concerned about jury service by unqualified jurors can and should thoroughly examine the prospective jurors during voir dire about their qualifications to serve.[10] Such a thorough examination should reduceif not entirely eliminatethe instances of service by unqualified jurors.
For these reasons, we reverse the order granting the City a new trial, and we remand this case for the reinstatement of the jury's verdict and the judgment. On remand, the trial court must conduct further proceedings to dispose of the City's motion for remittitur, its motion to alter or amend the judgment, and the other grounds raised by the City in its motion for new trial.
Reversed and remanded for further proceedings.
FULMER, C.J., Concurs.
CASANUEVA, J., Concurs specially with an opinion.
CASANUEVA, Judge, Concurs specially.
Because I conclude that the City of Tampa has failed to meet the three-prong analytical test established in De La Rosa v. Zequeira, 659 So.2d 239, 241 (Fla.1995), reiterated in Roberts ex rel. Estate of Roberts v. Tejada, 814 So.2d 334, 343 (Fla. 2002), and State Farm Fire & Casualty Co. v. Levine, 837 So.2d 363 (Fla.2002), I concur with the determination that the trial court's order granting the City a new trial should be reversed.

I.
Although the majority has masterfully identified and sought to reconcile the two lines of cases, for several reasons I am not persuaded that the rationale expressed in State v. Rodgers, 347 So.2d 610, 614 (Fla. 1977), should be extended. First, Rodgers required that in order to obtain a new trial based on juror misconduct, the recipient of an unfavorable verdict in which a statutorily disqualified juror concurred must show prejudice. Dissenting in Rodgers, Justice Hatchett expressed concern with the practical application of the majority rule requiring evidence demonstrating that a criminal defendant was not afforded a fair and impartial jury or that the accused's substantial rights were prejudiced by the participation and misconduct of any unqualified juror. 347 So.2d at 614 (Hatchett, J., dissenting). This concern, in my view, remains valid today.
Next, I have some reservations regarding the continued vitality of Rodgers. In *418 Lowrey v. State, 705 So.2d 1367 (Fla. 1998), three justices suggested that the supreme court recede from Rodgers. In a special concurrence, Justice Anstead observed, "This Court did not explain in Rodgers, and has not explained today, the practical implications of its requirement that an innocent litigant demonstrate actual prejudice when an unqualified juror is permitted to decide the case." Id. at 1370 (Anstead, J., specially concurring).
Ultimately, Lowrey created an exception to Rodgers that limited, rather than extended, its scope. In carving out the exception, the court found that "the very foundation of our criminal justice process is compromised when a juror who is under criminal prosecution serves on a case that is being prosecuted by the same state attorney's office that is prosecuting the juror." 705 So.2d at 1370.
Third, I believe that following the De La Rosa analysis rather than the Rodgers rule allows the judiciary to enforce the public policy established by our legislature rather than to nullify the public policy without exercising the power of constitutional judicial review. The Florida Legislature has drawn a line between those who qualify to sit as jurors and those who do not. It is the legislature's prerogative to set the floor for juror qualifications and courts should not blithely disregard its decision. See Rodgers, 347 So.2d at 614 (Hatchett, J., dissenting) ("It is the legislature's job to make the law, and in the absence of a finding that the statute is unconstitutional, it should not be effectively stricken. The court today completes the repeal of Section 40.01(1), Florida Statutes."); Lowrey, 705 So.2d at 1371 (Anstead, J., specially concurring) (commenting on Justice Hatchett's dissent in Rodgers: "The logic and clarity of Justice Hatchett's opinion is striking. Obviously, and at a minimum, Florida citizens are entitled to a jury composed of persons who are statutorily competent to serve as jurors."). It is, in my view, a better judicial policy to craft a rule that does no violence to the statute. De La Rosa fits this requirement.
As the majority notes, jurors today are called to serve from the rolls of licensed drivers. They are then preliminarily qualified en masse by the duty judge, as Judge Baumann did in this case, generally without the presence of either party's counsel or a court reporter. When a voir dire is later being conducted in the courtroom where trial will be held, it is unlikely the trial judge will allow counsel to repeat qualifying questions previously posed to the entire venire. Thus, the parties and their trial counsel are presented with a perilous situation. They can repeat the questions asked earlier, and possibly incur the wrath of the trial judge or jurors, or proceed without a record, and run the risk that a verdict will be reached with the participation of a statutorily unqualified juror.
Finally, I share the majority's view of finality as a judicial value. Litigation should and must come to an end. But I also believe that if the legislature has prescribed requirements for jury service, both fairness and the law mandate that a party receive that to which it is entitleda properly qualified jury.
Our legislature has established the minimum qualifications for juror service. As the majority notes, prejudice from the service of an unqualified juror may favor one side or the other, and it is impossible to establish that prejudice without delving into the deliberative process of the jury. Therefore, should a juror serve in violation of section 40.013(1), Florida Statutes (2003), inherent prejudice should be presumed. Thereafter, the party receiving the benefit of the verdict gained with the service of the improperly qualified juror or jurors should have the burden of overcoming this presumption by showing that no *419 prejudice existed. Allocation of the burden in this way gives appropriate judicial difference to the legislative enactment rather than, as previously noted, effectively repealing a duly enacted and constitutional statute.
Because it does not require a party to demonstrate actual prejudice, the three-prong De La Rosa test, in my view, is a superior analysis for deciding whether a new trial should be granted when an unqualified juror has served. De La Rosa was a medical malpractice action in which the jury returned a verdict in the doctor's favor. In a motion for new trial, the plaintiff asserted that the jury foreperson's failure to divulge his participation in numerous prior lawsuits constituted material misconduct that entitled the plaintiff to a new trial. The trial court granted the motion, but the Third District, by a two-to-one vote, reversed and reinstated the jury's verdict. Zequeira v. De La Rosa, 627 So.2d 531, 533 (Fla. 3d DCA 1993). On further review, the supreme court outlined the analytical test for granting a new trial when one party claims juror nondisclosure, basing its reasoning on the three-part test enunciated in Skiles v. Ryder Truck Lines, Inc., 267 So.2d 379 (Fla. 2d DCA 1972):
First, the complaining party must establish that the information is relevant and material to jury service in the case. Second, that the juror concealed the information during questioning. Lastly, that the failure to disclose the information was not attributable to the complaining party's lack of diligence. [Skiles, 267 So.2d] at 380. We agree with this general framework for analysis and note that the trial court expressly applied this test in its order granting a new trial.
De La Rosa, 659 So.2d at 241.
The continuing viability of the De La Rosa three-prong test was reaffirmed in Tejada, 814 So.2d 334. In Tejada, the court concluded that a juror's prior litigation history, which she failed to disclose upon initial questioning, was material and thus could have been the basis for a peremptory challenge. The court cautioned the lower courts not to confuse materiality with prejudice, as prejudice is not part of the De La Rosa test. 814 So.2d at 342. Addressing the attorney's due diligence requirement, the court further held that trial counsel was not required to conduct a public records search of venire members prior to trial. 814 So.2d at 344-45.
Applying the first prong to this case whether the information is relevant and material to jury serviceI conclude that the fact of prior convictions undisclosed by the two jurors is both relevant and material. This conclusion is based upon two considerations. First, the Florida Legislature, by enacting section 40.013(1), has specifically precluded certain convicted felons from jury service. Second, the defendant is the City of Tampa, which operates a police department whose officers may be required to arrest people. It is thus logical and important for the City to ascertain whether a prospective juror harbors any prejudice against the government or its law enforcement arm. The withholding of this information becomes material if counsel is denied the opportunity to make an informed decision about challenging a juror, either for cause or peremptorily. A juror's concealment of a material fact that is relevant to the pending controversy, as here, is legally prejudicial because it impairs a party's right to exercise an appropriate juror challenge. See Taylor v. Magana, 911 So.2d 1263, 1267 (Fla. 4th DCA 2005) ("`A juror who falsely misrepresents his interest or situation, or conceals a material fact relevant to the controversy, is guilty of misconduct, and such misconduct is prejudicial to the party, for it impairs his right to challenge.'") (quoting De La *420 Rosa, 659 So.2d at 241). The City has satisfied the first prong of the De La Rosa test.
The next consideration is whether the jurors concealed the desired information during questioning. See, e.g., Taylor, 911 So.2d at 1271 (holding that a juror's failure to disclose that he and his mother were defendants in a pending personal injury action constituted concealment, and such concealment did not have to be purposeful to constitute misconduct sufficient to entitle the moving party to a new trial). Here, the trial judge's order granting the City a new trial provides the necessary facts to answer this question. The trial judge realized that he had propounded this precise inquiry at the initial mass qualification proceeding and received no affirmative response to the question whether any prospective juror had been previously convicted of a felony. Furthermore, the suspect jurors' questionnaires showed that one juror had checked the "yes" box indicating that he or a member of his family or a close friend had been accused of a crime, but the other juror had checked the "no" box in response to this same question. Thus, the trial judge concluded that at least one juror clearly failed to disclose this critical information. This evidence demonstrates that the information about prior criminal accusations and convictions was directly requested but not provided. See Birch ex rel. Birch v. Albert, 761 So.2d 355, 358 (Fla. 3d DCA 2000) (holding that information is considered concealed for purposes of the three-part test when the information is squarely asked for and not provided; but it is not concealment when the juror's answer is ambiguous and counsel fails to follow up with further questioning). Even if it is assumed that Juror No. 1183 and Juror No. 250 were present to hear the prior felony question during the mass qualification proceeding, their silence in the face of direct questioning by the trial judge created no ambiguity requiring clarification. Therefore, the City has satisfied the second prong.
To satisfy the third and final prong, the complaining party must demonstrate that the failure to disclose the disqualifying information was not attributable to its lack of due diligence. De La Rosa, 659 So.2d at 241. The record compels me to conclude that the City failed to establish its due diligence. Despite Juror No. 1183's affirmative disclosure on the written questionnaire regarding the accusation of a crime, the City did not direct a single question on that disclosure to Juror No. 1183. Nothing on this record suggests that the City would have followed a different procedure as to Juror No. 250. Plainly, the City was alerted to a problem with at least one of the jurors but failed to follow through or to demonstrate a concern.
Because I conclude that the City did not satisfy the three-prong test enunciated in De La Rosa, 659 So.2d at 241, a test that is appropriate in both criminal and civil cases, I concur in result only.
NOTES
[1] Because the court reporter did not arrive until after the trial had already begun, the transcript of the voir dire examination is incomplete. Nevertheless, neither of the parties claims to have asked any of the prospective jurors questions about prior felony convictions during voir dire examination.
[2] Although the point is not material to our disposition of this case, the trial court's order is factually inaccurate to the extent that it suggests that the questionnaire asked jurors about prior "arrests." In fact, the questionnaire asked about prior accusations of a crime. One may be accused of committing a crime without being arrested.
[3] The hearing on the City's motion for new trial was conducted in two sessions on different days. On the first day of the hearing, the trial court announced its factual findings about the failure of the two jurors to disclose their prior felony convictions. Mr. Companioni's trial counsel, who does not represent Mr. Companioni in this appeal, made the following response to the trial court's ruling: "So we got that established." Thereafter, Mr. Companioni's trial counsel did not challenge the adequacy of the record to support the trial court's findings of fact.
[4] We consider the City's arguments under the "tipsy coachman" doctrine. See Robertson v. State, 829 So.2d 901, 906-07 (Fla.2002); Dade County Sch. Bd. v. Radio Station WQBA, 731 So.2d 638, 644-45 (Fla.1999).
[5] We refer to the Fourth District's opinion in Rodgers v. State, 338 So.2d 1121 (Fla. 4th DCA 1976), as "Rodgers I."
[6] Notably, the Fourth District's conclusion that the juror's concealment of facts pertinent to her statutory disqualification warranted a new trial in the absence of a showing of actual prejudice is identical to the theory expressed in the trial court's order that granted the City a new trial.
[7] For purposes of this discussion, we are referring to jurors with disqualifying convictions who have not had their civil rights restored.
[8] For a detailed consideration of the "inherent bias" issue, see Brian C. Kalt, The Exclusion of Felons from Jury Service, 53 Am. U.L.Rev. 65, 73-75, 105-08 (2003).
[9] For an exception to this general proposition, see Lowrey v. State, 705 So.2d 1367 (Fla.1998). Under section 40.013(1), "[n]o person who is under prosecution for any crime . . . shall be qualified to serve as a juror." In Lowrey, the Supreme Court of Florida held that "where it is not revealed to a defendant that a juror is under prosecution by the same office that is prosecuting the defendant's case, inherent prejudice to the defendant is presumed and the defendant is entitled to a new trial." Id. at 1368. "[T]he purpose of disqualifying a person who has a pending prosecution is to avoid the possibility that that person might vote to convict in the hope of getting more favorable treatment from the prosecution in his own case." Thompson v. State, 300 So.2d 301, 303 (Fla. 2d DCA 1974). Thus a person who is facing a pending criminal prosecution is disqualified from jury serviceat least in a criminal casenot because of his or her status but on account of the potential for actual bias or prejudice inherent in the situation. In Lowrey, the supreme court stated that it was not overruling its prior decision in Rodgers II but was, instead, "simply carving out an exception based on the unique circumstances presented." 705 So.2d at 1370.
[10] We realize that counsel may be understandably reluctant to press prospective jurors with questions about prior felony convictions during voir dire. Some members of the venire may find such questions to be insulting or demeaning. However, the extent to which such inquiries should be pursued is only one of many strategic decisions that counsel routinely make during a jury trial.